[No. 2,695.]

JEROME B. COX AND THOMAS J. ARNOLD v. THE WESTERN PACIFIC RAILROAD COMPANY, THE WESTERN PACIFIC RAILROAD, THE CENTRAL PACIFIC RAILROAD COMPANY OF CALIFORNIA, AND CHARLES McLAUGHLIN.

WHEN CONTRACT IS ENTIRE AND NOT SEVERABLE.—If a contractor agrees with a railroad company to grade a section of its road, and do all work necessary to make the road ready for the cross-ties and iron equipments, and to receive a fixed sum for the work, to be paid from time to time as the work progresses, at the prices fixed and estimates of work done, made by an Engineer, the contract is entire, and the provision for payments from time to time as the work progresses does not make it severable.

BUT ONE MECHANICS' LIEN ALLOWED UNDER AN ENTIRE CONTRACT.— Neither a contractor nor a sub-contractor can, from time to time, as the work progresses, file successive liens for work done on an entire contract. In such case but one lien can be acquired, and that must be filed within the time specified in the statute after the completion of the work.

LIEN ON PART OF A RAILROAD.—A lien for work or materials cannot be acquired on a portion of a railroad, but must be filed on the entire road. The contractor who grades a section only of the road cannot file a lien on that section alone.

APPEAL from the District Court of the Third Judicial District, Alameda County.

The Western Pacific Railroad Company is a corporation, formed on the 13th day of December, 1862, to build a railroad from a point at or near the City of San José, where it connected with the San Francisco and San José Railroad, through the Counties of Santa Clara, Alameda, San Joaquin, and Sacramento, to the City of Sacramento, a distance of one hundred and twenty-three miles, and there to connect with the Central Pacific Railroad.

On the 10th day of December, 1864, Charles McLaughlin entered into a contract with the railroad company to grade its roadbed, from the terminus, near San José, to Sacramento, and to construct all superstructures, buildings, machinery, and all other things necessary to place the road in

complete working order. The road was to be completed from the terminus, near San José, for a distance of twenty-five miles, within one year fom December 1st, 1864, and the remainder to be completed within four years from the last named date. The corporation contracted to pay him for the work and material, five millions and four hundred thousand dollars. Payments were to be made as the work progressed and the materials were furnished, at estimates made by the Engineer of the company.

On the 7th day of January, 1865, McLaughlin entered into a contract with Jerome B. Cox, Thomas J. Arnold, and Jackson R. Myers, under the name of Cox, Myers & Co., by which they were to grade that part of the road from the terminus, near San José, to Stockton, a distance of seventy-four and one quarter miles, and to do the masonry work and all things necessary for placing the cross-ties and iron equipments on the track; and McLaughlin was to pay them therefor the sum of nine hundred thousand dollars. The work was to be completed from the terminus, near San José, for a distance of twenty miles, in nine months from the 1st day of January, 1865; and the next section of twenty miles within nine months thereafter; and the next, or third section of twenty miles, within nine months thereafter, and the balance within six months from the completion of the third section. The payments were to be made as the work progressed, and materials were furnished, at amounts fixed by the estimates of the Chief Engineer of the company. The Engineer was to examine and report from time to time as the work progressed, as often as once a month, if required. It was further provided in the contract, that upon the completion of the first section of twenty miles to the acceptance of the Engineer, and upon the approval of the Board of Directors, the same should be accepted and received as fully completed, and that there-

after, upon the completion of each section, it should be, in the same manner, received as fully completed.

Cox, Myers & Co. completed the first section of the railroad according to the terms of their contract, but were prevented from doing any more work by the failure of McLaughlin to pay them for the work completed.

On the 15th day of June, 1866, Cox & Arnold, to whom Myers had sold his interest in the contract, sent to B. F. Mann, McLaughlin's attorney in fact, the following notice:

"SAN FRANCISCO, June 15th, 1866.
" *To* B. F. MANN, ESQ., *attorney in fact for Charles Mc-Laughlin:*

"SIR: You are hereby notified that in consequence of the non-payment of the estimate of June 5th, 1866, for work done on the Western Pacific Railroad under our contract with you, dated January 7th, 1865, we are compelled to suspend work entirely from this date on said railroad, and will proceed to make a settlement of accounts with you in accordance with the terms of said contract.

"COX & ARNOLD."

To this note Mann, as agent of McLaughlin, replied on the following day, as follows:

"SAN FRANCISCO, June 16th, 1866.
" *Messrs.* Cox & ARNOLD, *successors to Cox, Meyers & Co.:*

"GENTS: Your letter of the fifteenth instant, giving me notice that in consequence of the non-payment of the estimate of June 5th, 1866, for work done on the Western Pacific Railroad, under your contract with me, dated January 7th, 1865, you are compelled to suspend work entirely on said railroad, and will proceed to make a settlement of accounts with me, in accordance with the terms of said contract, has been received.

"In reply, I hereby notify you that I do not recognize

your right to suspend work on said railroad without having first received my orders so to do, and I hereby forbid such suspension.

                    "Respectfully,

                            "C. McLAUGHLIN,

                    "By B. F. MANN, his attorney in fact.

  "Received June 16th, at 12:35."

There was due Cox, Myers & Co., for the work completed, the sum of one hundred and fifty thousand seven hundred and eighty-two dollars and eighty-nine cents, in gold coin of the United States, which sum was fixed by the report of the Chief Engineer. The plaintiffs filed a lien on said completed section, and this action was brought to enforce the same. The complaint alleged that the Central Pacific Railroad Company claimed to have an interest in the railroad. The Court below rendered judgment for the plaintiffs, enforcing the lien for said sum, and legal interest, on the first section of the road. The defendants appealed.

The other facts are stated in the opinion.

*Campbell, Fox & Campbell,* for Appellants.

This is an action for foreclosure of lien, claimed under the Lien Law of 1862. (2 Hitt. 4484.) Under that law, as well as the one of 1867–8, plaintiffs had the right to bring separate suits—one for foreclosure of lien, and one for an independent judgment *in personam.* This being the case, the action for foreclosure must stand or fall as such; and if it appears that there was no lien, or that, having been one, it has been lost, or the right to foreclose it has become barred, then as to that case there is no cause of action.

The railroad is a unit—one structure from San José to Sacramento, and it has not been completed. Hence a lien could not be filed and prosecuted against it if actual completion of the building or construction was required.

Lien laws are special in their character; and persons

seeking to enforce the extraordinary remedies provided by laws of such a character must strictly comply with all the provisions of the law. (*Walker* v. *Hauss-Hijo*, 1 Cal. 183; *Bottomly* v. *Grace Church*, 2 Cal. 91; *Cohen* v. *Levy*, 6 Cal. 296; *Davis* v. *Livingston*, 29 Cal. 283.)

*S. W. Sanderson*, also for Appellants.

The plaintiffs' contract had not been fully performed before suit. It is clear that the contract is an entire contract. The consideration upon neither side can be severed. The promise upon the one side was to construct the road from San José to Stockton. The promise upon the other side was to pay the full sum of nine hundred thousand dollars, as the work progressed. The contract was, therefore, entire. The mere fact that the consideration was to be paid in installments, upon monthly estimates, does not render the contract severable. Such ·might have been the result, according to some of the cases, had the consideration been payable in installments upon the completion of given sections of the road. Thus, it has been held, if a ship be built upon a special contract, and it is stipulated in the contract that a certain portion of the price shall be paid when the keel is laid, a certain portion when the work has reached the light plank, and the remainder when the ship is launched, there arises a separate contract for each installment, and the contract is, therefore, severable. (*Woods* v. *Russell*, 5 B. & Ald. 942; *Clarke* v. *Spence*, 4 Ad. & El. 448.) But a contrary rule has also been declared. (*Andrews* v. *Durant*, 11 N. Y. 25.)

But here the contract does not call for installments upon the completion of given sections of the road. The call is for installments upon monthly estimates of work, whether finished or unfinished, which leaves the consideration entire upon both sides. Thus it has been held that a contract for the construction of a part of a turnpike " beginning at the

Court House in the borough of Lewiston, to Kelley's Run," to be paid for in installments as the work progresses, reserving one thousand dollars of the sum due, according to estimate at the time of payment, is an entire contract. (*Shaw* v. *The Turnpike Co.*, 2 Penn. 454.)

The case last cited is upon all fours with the case at bar and is conclusive of the question. But for further light, if any be needed, in illustration of entire and severable contracts, see 2 Parsons on Contracts, p. 29, Sec. 4, et seq.; *Clark* v. *Baker*, 5 Metc. 452; *Miner* v. *Bradley*, 22 Pick. 457; *Bersch* v. *Sander*, 37 Missouri, 104.

The contract being an entire contract, the respondents cannot recover for a part performance without alleging a breach of the contract by McLaughlin, which would legally justify them in abandoning the contract and suing upon a *quantum meruit.*

The complaint is not the common count of the English practice for work and labor. It sets out a special contract, which setting out was necessary to enable the respondents to present their claim to recover for profile quantities. Had the respondents counted upon a *quantum meruit* only, the appellants would have answered "special contract and non-performance by respondents," to which respondents would have replied " breach by McLaughlin in not paying estimates and abandonment by them." Without thus replying and proving a breach by McLaughlin they could not have recovered upon a *quantum meruit* under the English practice.

The complaint was drawn, or was intended to be drawn, in accordance with the code of this State. It attempts to state the real facts of the case. By way of inducement the contract between McLaughlin and the company is first stated in legal effect; then follows the contract between McLaughlin and the respondents, which appears upon the face of the complaint to be an entire contract, and further not to have been fully performed by the parties suing. To make a case,

under the circumstances thus disclosed in the complaint, it should have been further alleged that McLaughlin had refused to perform on his part, and that by reason of such refusal the respondents had a right to abandon the contract and had done so, and that, too, not generally but specially, showing the precise act or omission relied on as constituting the breach. For the purposes of illustration take this case. The omission, relied on as a breach on the part of McLaughlin, is his failure to pay the estimate of the 5th of June, 1866. This failure should have been specially alleged.

Had the respondents fully performed the contract on their part, a general assignment of the breach would have been sufficient, as that McLaughlin had failed and refused, etc.; but, there having been only a part performance, they must aver some legal excuse for the non-performance of the remainder, as that full performance has been prevented by the default of McLaughlin, or by mutual consent, or by the command of either party having the right to stop performance. (1 Chitty on Pleadings, 332, et seq.; 2 Parsons on Contracts, 190*.)

Again: Under the English practice the form of action would have been *indebitatus assumpsit*. Now, it is well settled that *indebitatus assumpsit* will not lie where there is a special contract, which is still subsisting and in force. (*Linningdale* v. *Livingston*, 10 John. 37; *Raymond* v. *Bearnard*, 12 id. 274; *Wilt* v. *Ogden*, 13 id. 56; *Jennings* v. *Camp*, id. 94; *Felton* v. *Dickinson*, 10 Mass. 287; *Shepard* v. *Palmer*, 6 Conn. 95; *Vandenheuval* v. *Storrs*, 3 id. 203; *Cranmer* v. *Graham*, 1. Blackf. 406.)

From which it follows that under the practice in this State, when it appears upon the face of the complaint that a special entire agreement exists, it must further appear that it has been fully performed on the part of the plaintiff, or, if performed in part only, that the plaintiff has a legal excuse

for the non-performance of the remainder, or no case is made.

The idea of counsel on the other side, that by the terms of the contract each section of twenty miles is made a unit, and, therefore, that the construction of each twenty miles becomes a separate job, is clearly untenable. Nor does Gordon's case, in 6 Wallace, 586, sustain any such theory. The clause in question was doubtless inserted for the sole purpose of enabling McLaughlin to proceed with the tracklaying as fast as each section should be completed. Unless he could have had that privilege, the result would have been that he could not have commenced tracklaying until after the entire roadbed from San José to Stockton had been completed. This did not convert the contract into a severable contract, or separate contracts as to each section of twenty miles, for the obvious reason that upon the completion of a given section Cox and Arnold did not become entitled to full pay for the work on such section, and never could have recovered it until after a full completion of their contract. This circumstance distinguishes this case from the very doubtful cases of *Woods* v. *Russell* and *Clark* v. *Spence*, cited above. There, upon the laying of the keel, upon reaching the light plank, etc., a certain and specific sum was to be paid, which was full payment for the work done up to that time, so that the title to the part thus completed was transferred from the builder to the owner or purchaser, as the Court considered. But those cases even, are not law in America. (*Andrews* v. *Durant*, 11 N. Y. 25.)

Where one party agreed to furnish the other ice, during a given time and season, to be delivered from his cellar from day to day, at a fixed price per ton, payable monthly for the quantity delivered at the end of each month, this was held to be an entire contract, and that the vendor must show full

CAL. REPS. XLIV—4

performance before he could recover for any part of the price, unless for legal cause he had rescinded the contract. (*Bersch* v. *Sander*, 37 Missouri, 104.)

This is a stronger case for the severable theory of counsel upon the other side than the case at bar, yet it was decided against that theory. Ice during the season was stipulated for, and for that reason it was held to be an entire contract, notwithstanding it was to be delivered at a fixed price per ton.

Here the construction of the road from San José to Stockton was stipulated for, and for that reason it must be held to be an entire contract, although it was to be completed and delivered in sections. Had the contract been for a certain price per section, which it was not, it would have been on all fours with the case cited, and even then, according to the case cited, it would have remained an entire contract.

It is settled beyond dispute that where merchandise is sold by weight or measure, and the value is ascertained by the price affixed to each pound, or yard, or bushel of the quantity contracted for, the contract does not for that reason become severable. (*Clark* v. *Baker*, 5 Metc. 452; *Minor* v. *Bradley*, 22 Pick. 457; *Johnson* v. *Johnson*, 3 Bos. & Pull. 162.)

*M. C. Cobb* and *John B. Felton*, for Respondents.

The term "completion" as used in section nineteen of the Act concerning mechanics' liens (Hitt. 4489,) does not mean the completion of the particular job for which a lien is sought, but the completion of the whole work in process of construction. For instance, A., a sub-contractor, takes the job of digging the cellar and laying the foundation for a building of great proportions and great architectural pretensions, from the original contractor, the job to be done in six months; the superstructure is in the hands of the original contractor, and is to be done in three years from a given date.

Now it is plain the completion referred to in the section named (Sec. 19, Mechanics' Act), means the completion of the superstructure itself—the whole work, and not the completion of the job of underpinning.

The lien of the sub-contractor attaches as soon as the building is begun, and extends to the whole ground, and the entire building, and not to a particular part only. (Secs. 1, 4, Mechanics' Lien Law; Hitt., Secs. 4471, 74; *Okisko Co.* v. *Matthews,* 3 Md. R. 176; Houck on Liens, Sec. 157.)

The contract itself provides that each section of twenty miles shall be a unit, or one construction. The language used is: "It is agreed, etc., that on the completion of the said first section of twenty miles of the work aforesaid, to the acceptance of the said Engineer, and the approval of said Board of Directors, the same shall be accepted and received as fully completed by said party of the second part, and the same shall be so accepted and received, as aforesaid, as each section of twenty miles thereafter of said road is completed as aforesaid." (*Canal Co.* v. *Gordon,* 6 Wallace, 586.)

The appellants, by their own wrongful acts, prevented respondents from completing the work; and, consequently, the suggestion made does not apply.

The appellants cannot take advantage of their own wrong. Where the completion of a job is arrested by the act or omission of the party for whom the work is done, the contractor has an election to treat the contract as rescinded, and recover on a *quantum meruit* the value of his labor; or he may sue upon the agreement, and recover for the work completed at the stipulated price, etc. (*Jones* v. *Judd,* 4 N. Y. 412; *Haskell* v. *McKenny,* 4 Cal. 411; *Hale* v. *Trout,* 35 Cal. 229.)

By the Court, RHODES, J.:

The contract entered into between McLaughlan and Cox, Myers & Co. is an entire contract. The provision for the payment for the work, etc., from time to time, according to estimates to be made, does not change the character of the contract in that respect, and make it severable.

It is not alleged in the complaint that the work contracted to be performed has been completed, nor that its performance has been prevented by McLaughlin or either of the defendants, nor that the contract has been rescinded. The statute under which the lien in this case was filed does not contemplate that a contractor or sub-contractor may, from time to time, as the work progresses, file successive liens for work and materials performed and furnished under an entire contract; but he is entitled to acquire only one lien, and for this purpose his claim must be filed within the time specified in the statute, after the completion of the work. It, therefore, does not appear from the complaint that the plaintiffs were entitled to a lien at the time when they filed their account in the Recorder's office.

The lien was filed only upon a portion of the road. The statute, in our opinion, clearly contemplates that a lien, when it attaches, shall bind the whole structure. It would render the statute absurd to hold that one contractor or sub-contractor could acquire a lien upon a bridge, another upon a tunnel, and a third upon a culvert, all of which constitute portions of a railroad; but that interpretation would do no greater violence to the intention of the Legislature than a construction which would permit a lien to be acquired upon each mile or section of the road.

No personal judgment was rendered, and it, therefore, becomes unnecessary, for the purposes of this appeal, to determine whether the Court erred in respect to the amount remaining due to the plaintiffs, or in allowing interest on

such amount, or in refusing to find upon the issue of fraud, which was tendered by the defendants.

Judgment reversed, and cause remanded for a new trial.

Mr. Chief Justice WALLACE and Mr. Justice CROCKETT, being disqualified, did not sit in this case.