[No. 12189. In Bank. — May 1, 1881.]

JEROME B. COX, Respondent, *v.* KATE D. Mc-
LAUGHLIN, Executrix etc. of Charles McLaugh-
lin, Deceased, Appellant.

Contract — Action for Services — Amendment — Quantum Meruit —
Statute of Limitations. — A complaint in an action for breach of con-
tract, which as originally framed seeks to recover the contract price of
services performed by the plaintiff in pursuance of the contract, together
with profits which he would have made, on the ground that he had been
technically "prevented" from completing the contract by the defendant,
may be amended so as to aver a claim for the value of the services actu-
ally done as upon a *quantum meruit*. Such an amendment is not the
substitution of a new cause of action, so as to continue the running of
the statute of limitation until its filing.

Id. — Breach of Contract — Fraudulent Agreement with Agent of
Defendant. — The action was brought to recover the value of work done
by the plaintiff in grading a railroad, in pursuance of a contract with
the defendant. By the terms of the contract, the road was to be con-
structed according to a general route and profile, subject to such varia-
tions as the chief engineer of the road might direct. The plaintiff was
to receive a fixed price for the work, whether the variations ordered by
the engineer should make the work heavier or lighter. During the pro-
gress of the work, the plaintiff entered into a secret arrangement with
the engineer to give the latter a share of the profits of the contract if he
would, without impairing the character of the road or doing anything to
the disadvantage of the railroad company, make such variations, when-
ever possible, as would make the work less expensive. The engineer
made certain variations, and received a percentage of the plaintiff's
profits. The changes made by the engineer were, however, all submitted
to and approved by the railroad company. *Held*, that the arrangement
with the engineer, conceding it to have been improper, did not prevent
the plaintiff from recovering the reasonable value of his work.

Id. — Unliquidated Damages — Interest when not Recoverable be-
fore Verdict. — In an action to recover the reasonable value of services
performed by the plaintiff, the amount, character, and value of which
can only be established by evidence in court, or by an accord between
the parties, and which are not susceptible of ascertainment either by
computation or by reference to market rates, the plaintiff is not enti-
tled to interest prior to verdict or judgment.

Id. — Findings — Evidence. — The finding as to the value of the work done
by the plaintiff, *held*, supported by the evidence.

Appeal from a judgment of the Superior Court of the
city and county of San Francisco, and from an order re-
fusing a new trial.

The facts are stated in the opinion of the court.

*S. M. Wilson, Wilson & Wilson,* and *L. D. McKisick,* for Appellant.

The cause of action set up by the amendment differed from the original. (*Anderson* v. *Meyers,* 50 Cal. 526; *Lawrence* v. *Ballou,* 50 Cal. 238; *Atkinson* v. *Amador & S. C. Co.,* 53 Cal. 102.) The plaintiff cannot renounce the express agreement and recover upon a *quantum meruit.* (*Dermott* v. *Jones,* 2 Wall. 9; *Stark* v. *Parker,* 2 Pick. 274; 13 Am. Dec. 425; *McMillan* v. *Vanderlip,* 12 Johns. 165; 7 Am. Dec. 299; *Woodington* v. *Olliver,* 2 New R. 61; *Ellis* v. *Hamlin,* 3 Taunt. 52; *Shaw* v. *Turnpike Co.,* 2 Pa. 458; *Champlin* v. *Rowley,* 13 Wend. 259; *Olmstead* v. *Beale,* 36 Mass. 528; *Munroe* v. *Britt,* 8 El. & B. 739.) The agreement with the engineer was a breach of the contract by the plaintiff. (*Panama etc. Tel. Co.* v. *India Rubber etc. Tel. W. Co.,* L. R. 10 Ch. 515; *Pawley* v. *Trumbull,* 3 Giff. 70; *Orms* v. *Beadel,* 2 Giff. 166; *Kihlberg* v. *United States,* 97 U. S. 401; *Martinsburg etc. R. R. Co.* v. *March,* 114 U. S. 550; 1 Wharton on Contracts, secs. 593–596.) The plaintiff was not entitled to interest before judgment. (*Osborn* v. *Hendrickson,* 8 Cal. 31; *Aldrich* v. *Durham,* 16 Ill. 403; *Illinois Cent. R. R. Co.* v. *Cobb,* 72 Ill. 148; *Chicago* v. *Allcock,* 86 Ill. 384; *Murray* v. *Ware,* 1 Bibb, 325; 4 Am. Dec. 637; *Cromwell* v. *Wilkinson,* 18 Ind. 365; *Brady* v. *Wilcox,* 44 Cal. 239; *Haggin* v. *Clarke,* 51 Cal. 112; *Coburn* v. *Goodall,* 72 Cal. 498.)

*D. M. Delmas,* and *Henry E. Highton,* for Respondent.

The plaintiff is entitled to recover the value of the work done, with interest. (1 Hittell's Gen. Laws, secs. 3856; *Mix* v. *Miller,* 69 Mo. 394; *Ruckman* v. *Bergholtz,* 37 N. J. L. 437; *Cox* v. *McLaughlin,* 54 Cal. 605; *Rodemer* v. *Hazelhurst,* 9 Gill, 288; *Cranmer* v. *Graham,* 1 Blackf. 406; *Jones* v. *Judd,* 4 N. Y. 412; *Carroll* v. *Giddings,* 58 N. H. 333; *Moulton* v. *Trask,* 9 Met. 577; *Mitchell* v. *Scott,* 41 Mich. 108.)

The COURT.—This cause has been before this court several times on an appeal, and it is unnecessary to restate the facts. The history of the case may be found in the following volumes of our reports: 44 Cal. 18; 47 Cal. 89; 54 Cal. 605; 52 Cal. 590; 63 Cal. 196. It is sufficient to say that in 1864 Charles McLaughlin, now deceased, entered into a contract with the Western Pacific Railroad Company to grade the road-bed of its railroad from near the city of San José to Sacramento, a distance of 123 miles, and to construct all the superstructures, etc., necessary to place the road in complete running order, for the sum of five million four hundred thousand dollars; and that in January, 1865, said McLaughlin made a contract with the plaintiff Cox and his associates, by the terms of which the latter were to grade that part of the road which lies between San José and Stockton, a distance of seventy-four and a quarter miles, to do the masonry work, and all things necessary for placing the cars, ties, and iron equipments on the track, for which McLaughlin was to pay them the sum of nine hundred thousand dollars. Cox afterwards became the assignee of all his associates. Payments were to be made by McLaughlin to Cox as the work progressed, at amounts to be fixed by the estimates of the chief engineer of the said Western Pacific Railroad Company. Cox finished the first twenty miles, and part of the twenty-first mile, and received certain payments; but McLaughlin then failing to make further payments as provided in the contract, Cox was unable to proceed further with the work through want of funds, and abandoned it. Upon the former trials in the court below (except the first, when an attempt was made to enforce a mechanic's lien), Cox persistently proceeded upon the theory that the failure of McLaughlin to make the payment due operated as a technical "prevention" of a compliance with the contract by Cox, and that, fore, the latter could recover contract rates on the

original contract, profits which he would have made, etc. This position was held repeatedly by this court to be untenable; and after the case was last here he amended his complaint in the court below, so as to aver a claim for the value of the work actually done, as upon a *quantum meruit.* The court below tried the case without a jury, found the value of the work, over and above all moneys paid, to be $98,228.49, and gave plaintiff judgment for said sum, with interest at statutory rates from June, 1866, the time of the failure of McLaughlin to make said payment. From this judgment, and from an order denying a new trial, defendant appeals. Said Charles McLaughlin, having in the mean time died, his executrix, Kate D. McLaughlin, was substituted as defendant. On the twenty-sixth day of April, 1888, Kate D. McLaughlin, having died, J. C. Pennie, administrator of the estate of said Charles McLaughlin, was made party defendant.

The main points made by the appellant are these: First, that the court abused its discretion in allowing said amendment to the complaint; second, that plaintiff should not recover because of a certain contract which he made with the chief engineer of the Western Pacific Railroad Company; third, that there is no evidence to support the finding as to the work actually done or its value; fourth, that no interest should have been allowed.

1. We think that there was no abuse of discretion in allowing the amendment setting up the *quantum meruit.* There were no new facts stated upon which a new cause of action was based. The facts as stated in all the complaints were substantially the same; and indeed, it is not clear that plaintiff could not have proceeded upon the theory of a *quantum meruit* under his former complaints. The same contracts, assignments, the work done, and materials furnished, performance by the plaintiff, the breach by the defendant, the existence of all the conditions precedent to payment, have appeared in all

of the complaints as the basis upon which the right to compensation in the plaintiff rested. When this case was last here the court directed that the judgment should be reversed, and that judgment should be entered· in the court below on the findings for defendant.

Afterwards, on rehearing, the judgment of this court was modified so as to reverse the judgment of the lower court and send the case back for a new trial. There must have been some object in this modification, and in view of the facts which have been repeatedly before the court, it was evidently regarded as possible to frame a complaint which would enable the plaintiff to recover the reasonable value of the services rendered and materials furnished. Of course, unless the facts stated constitute a new cause of action, the plaintiff's cause is not barred by the statute of limitations.

2. Under the contract between the railroad company and McLaughlin, the road was to be constructed according to a general route and profile; but it was to be varied according to the directions of the chief engineer. Cox was to receive the round sum of nine hundred thousand dollars for his entire work between the points named in his contract with McLaughlin, whether the variations ordered by the engineer should make that work heavier or lighter. Under these circumstances, Cox entered into a secret contract with the person who, for part of the time, was the engineer, that he would give to said engineer a certain percentage of the profits of his contract if he (the engineer) would, without impairing the character of the road, or doing anything to the disadvantage of the railroad company, make such variations, when it should be possible to do so, as would make the work of said Cox less expensive. It is claimed that this constituted a breach of the contract by Cox, Myers & Co., a fraud upon the defendant, which in any event should defeat the claim of the plaintiff. The court found that both the railroad company and McLaughlin were will-

ing that the engineer should make the work lighter without injury to said interest; that the variations were made in some instances at the request of said company and McLaughlin, and were all submitted to and approved by them, and that the said contract between said engineer and Cox was not fraudulent. Under his agreement with Cox, the engineer, for a period of about three months, shared in the dividends of the contractors to the amount of three thousand five hundred dollars altogether. The original profile had to be succeeded by a definite location, which necessitated many changes, and these changes, as we have seen, were sanctioned by all parties. It was possible for the engineer in making his definite location, by the exercise of extraordinary diligence and skill, to so perfect the work as to suit the convenience and the interest of all parties concerned. It appears that his work was done openly, and was in all respects indorsed. After the period mentioned, in which the engineer was receiving ten per cent under said agreement with Cox, a new contract was made between the contractors and McLaughlin. Assuming that the contract between the engineer and Cox was one not proper to have been made, we cannot see how McLaughlin was in any way injured by it, or that it should prevent plaintiff from recovering in this action. McLaughlin received all the benefit of Cox's work, and was paid for it by the railroad company without objection. Furthermore, it is proper to say that this same claim of fraud has appeared in every answer and on every appeal without receiving any notice. If it has been passed upon in any respect, it must have been adversely to the defendant. We must assume that this court, on former appeals, has considered all the points, this one among the rest. The case has appeared here repeatedly upon substantially the same facts. If this point now made is good, it has always been good, and certainly would have been noticed in the former decisions of this court herein.

Again, if we admit that this agreement with the engineer was fraudulent and sufficient to prevent a recovery by Cox under his contract, the answer is, the present action is not upon such contract, but upon a *quantum meruit* for the value of the services and materials furnished.

3. After the lapse of a great many years, it was, of course, a difficult thing to show accurately the amount and value of the work actually done. The whole contract price for the entire distance of the road which was to have been built by Cox was nine hundred thousand dollars. McLaughlin himself was to be paid for the same work two million fifty-eight thousand dollars, absolutely, whether performed by him or for him by others; and he testified that the price which he was to be paid for the work was reasonable. Mann, the agent for McLaughlin who executed the contract for McLaughlin, testified that the contract was fair; that the price, with ten per cent kept back, would allow a man to build the road, and not give him much profit, if any. At the time the work was done the chief engineer believed that the work could not be done for the price named. Under their contract the contractors were entitled for the first twenty miles completed to the sum of $308,427.46. McLaughlin's contract with the railroad company entitled him to receive from it the sum of $440,000, and he actually cleared the sum of $131,573 profit on the first twenty miles. There was testimony showing that there are no means now of ascertaining how much earth and how much rock had been removed by the contractors upon the road. Defendant's witness, Stangroom, testified that the value of the labor performed and materials furnished by the subcontractors was $186,963. The plaintiff testified that the actual value of the work and material was more than the estimates made by the engineer; was, in fact, about $360,690. The court found that the value of the labor

and materials was $285,918.49. It would seem, there-
fore, that the court took a sum which is nearly an aver-
age between the estimates made by the plaintiff and by
Stangroom, and. rendered judgment accordingly. The
uncontradicted testimony shows that the work done was
about four ninths of the whole work. The price to be
paid for the entire work was nine hundred thousand dol-
lars. The twenty miles were completed according to the
contract in a good and workmanlike manner. Changes
and deviations were made under the orders, and with the
consent of McLaughlin and the railroad company. The
work was turned over to the company by McLaughlin
in fulfillment of his contract with the company, and ac-
cording to estimates made on his behalf. If the rule be
that the contractors are entitled to such proportion of
the whole contract price as the work done bears to the
whole work, then the evidence would warrant a judg-
ment in favor of the plaintiff for four hundred thousand
dollars; but we assume that the value must be determined
regardless of the prices fixed in the contract, and it is
sufficient to say that the evidence as to such value is
conflicting, and the finding of the court is warranted by
some of the testimony in the. case.

4. The court below allowed interest on the amount
recovered from June 15, 1886. Appellants attack this
portion of the judgment as unwarranted by the facts and
law.

It may be stated, as a general principle, that interest is
not allowed on unliquidated damages or demands.

This term "unliquidated damages" applies equally to
cases of tort, as slander, assault and battery, etc., and to
cases upon a *quantum meruit*, for goods sold and delivered
or services rendered.

The reason of such denial of interest is said to be that
the person liable does not know what sum he owes, and
therefore can be in no default for not paying.

The damages in such cases are an uncertain quantity,

depending upon no fixed standard, are referred to the wise discretion of a jury, and can never be made certain except by accord or verdict.

As to such damages there can be no default, and hence the initial point at which to fix the starting of interest is wanting.

To this general rule there are many exceptions, and while it is said "a demand is unliquidated if one party alone cannot make it certain,—when it cannot be made certain by mere calculation " (1 Sutherland on Damages, 610),—yet the same author in the next sentence adds, "the allowance of interest as damages is not dependent on this rigid test." A review of the cases relied upon in support of this last assertion assert this proposition:—

"Whenever a debtor is in default for not paying money, delivering property, or rendering services in pursuance of his contract, justice requires that he should indemnify the creditor for the wrong which he has done him." (*Van Rensselaer* v. *Jewett*, 2 N. Y. 135; 51 Am. Dec. 275; *Lush* v. *Drure*, 4 Wend. 313; *Van Rensselaer* v. *Jones*, 2 Barb. 643; *Adams* v. *Fort Plain Bank*, 36 N. Y. 255.)

These and many other cases which might be cited from New York were mainly based upon express contracts, in which money was to be paid, services rendered, or a duty to be performed at a fixed and certain time,—cases in which the default of the debtor at the fixed period was apparent, the amount of the recovery, and not the right to recover at all, being the sole question.

This further distinction may be drawn from the New York cases: notwithstanding the damages are unliquidated and not capable of ascertainment by computation, still, if they can be determined by computation, together with a reference to well-established market values, then interest may be recovered.

The reason given for this modification of the earlier

rule is, that in many cases market values are so well established and so easily obtained, that it is easy for the debtor to obtain some proximate knowledge of how much he is to pay.

This distinction was noted by Selden, J., in *McMahon* v. *New York and Erie R. R. Co.*, 20 N. Y. 463.

Under the law as held in New York at the present time, it is not far wide of the mark to say all the cases in which interest may be recovered by the creditor, upon an unliquidated demand for damages arising upon a contract, proceed upon the theory, first, that the damages are capable of ascertainment by calculation; second, that if not capable of being thus ascertained, they may be determined by reference to well-established market values, together with computation; or, third, that the debtor is in default in not performing some obligation devolving upon him, whereby the amount of his debt could be rendered certain or susceptible of being made so by calculation.

These distinctions were referred to in *McMahon* v. *New York and Erie R. R. Co.*, 20 N. Y. 463, and the right to recover interest upheld upon the third ground, namely, that it was the duty of defendant to have caused its engineer to furnish estimates of the work done, and that had he done so the amount of the claim would have been so ascertained as to carry interest.

We have referred to some of the New York cases, for the reason that we think that they are in the advance upon the question of allowing interest upon unliquidated demands.

The case at bar is not an action upon an express contract between the parties; such a contract, it is true, existed, and had plaintiff recovered under it he would have been entitled to interest upon the several payments provided for therein from the dates at which they fell due; but for reasons not now necessary to be enumerated, a recovery upon the contract has been abandoned, and

plaintiff counts upon a *quantum meruit,* for the performance of labor and services, precisely as he might have done had there been no contract.

His services and the material furnished by him were uncertain as to amount, character, value, and time of payment, until fixed by a verdict or findings of the court. They were not of a character to have a fixed or ascertainable market value.

They could not be ascertained by computation, either in extent or value. · Defendant was not in default for not ascertaining that which, outside of the abandoned contract, he could not ascertain except by an accord or by verdict, or its equivalent.

In *Bank of California* v. *Northam,* 51 Cal. 387, this court held that interest could not be recovered upon an account for goods, wares, and merchandise sold and delivered. In *Brady* v. *Wilcoxson,* 44 Cal. 239, it was said: " The plaintiffs are not entitled to interest. Their claim was an uncertain and unliquidated demand. The amount due cannot be ascertained from the face of the contract, but is to be settled by process of law on such demands; interest *eo nomine* cannot be allowed."

The case of *Homer* v. *Hathaway,* 33 Cal. 117, cited by respondent, was an action of trover, in which the rule as to damages is quite different from that in cases like the one at bar. The rule in such cases was, that the plaintiff could recover the value of the property, with legal interest from the time at which the value is estimated. (*Douglass* v. *Kraft,* 9 Cal. 562.) Section 3336 of our Civil Code has substantially continued the rule as it existed previously, with the addition that under certain specified circumstances no interest can be recovered.

In *McFadden* v. *Crawford,* 39 Cal. 662, which was an action for work, labor, and services, this court allowed interest on the demand from the date of the filing of the complaint, reversing the action of the court below, allowing interest from the rendition of the services.

The rule thus enunciated finds some support in Suther-land on Damages, where it is said: "After demand, or after commencement of suit, accounts generally bear interest. The commencement of suit is a formal demand. Accounts are generally made of items which represent money paid, *goods sold and delivered, or services rendered, on request.* They are severally demands on which interest may be claimed, *though the price had not been fixed by agreement, and must be established by evidence.*" (1 Sutherland on Damages, 616.)

The same author adds that "where, however, the account or demand is for particulars, the value or amount of which cannot be measured or ascertained by reference to market rates, and are intrinsically uncertain, or the creditor's demand of payment is excessive or vague, a different case is presented."

The distinction mentioned is pointed out in many of the cases, and it is only by bearing it in mind that otherwise apparent conflict can be reconciled.

We are not prepared to say, in general terms, that no interest in any case can be recovered in an action upon contract for an unliquidated demand. *Mix* v. *Miller*, 57 Cal. 356, decided since the adoption of the code, and *McFadden* v. *Crawford, supra,* decided previously, attest the doctrine that in this state interest is allowable on such demand under some circumstances.

These were cases in which the contract had been fully performed by the creditors, the fruits thereof accepted by the debtors, without objection, and they were clearly in default, and in the latter case the only question was as to value.

But where, as in the case at bar, the amount of the services, their character and value, can only be established by evidence in court, or by an accord between the parties, and are not susceptible of ascertainment, either by computation or by reference to market rates,

or other known standard, we are of opinion plaintiff is not entitled to interest prior to verdict or judgment.

The cause is remanded with directions to the court below to modify its judgment in favor of the plaintiff by striking out the interest, and leaving the judgment to stand in favor of plaintiff for $98,228.49, with interest thereon at seven per cent per annum from October 21, 1886, the date of the entry of such judgment, together with costs of suit. The judgment and order are in all other respects affirmed.

THORNTON, J., concurred in the judgment.

McKINSTRY, J., did not participate in the decision.

TEMPLE, J., dissenting.—Charles McLaughlin entered into a contract with the Western Pacific Railroad Company to construct and equip the railroad from San José to Sacramento for five million four hundred thousand dollars, payable partly in stock. Having this contract on the seventh day of January, 1865, McLaughlin contracted with Cox, Myers & Co., to build, construct, complete, and furnish materials for the construction of the road-bed of the railroad from San José to Stockton, a distance of seventy-four and one quarter miles, for nine hundred thousand dollars.

Before the contract was entered into, a preliminary survey had been made and a profile of the road showing the cuts and fills. Specifications were made as to other work. Prices were attached, showing the estimated cost of the different species of work, the excavations and fills at certain rates per cubic yard, the bridging per lineal foot, etc. There was a stipulation in the contract, however, that the location of the road might be varied by the company and yet no change should be made in the contract price for the work, whether the actual amount was increased or diminished. It was further stipulated that, in case certain bonds were issued by named counties to aid the corporation to construct the road, "all

work done and materials furnished, and all other things required to be done and performed by and on the part of the parties of the second part, by the terms of this indenture of contract, shall be allowed and paid as the work progresses and materials are furnished, from time to time, at the prices and quantities made and fixed by an approximate estimate of the cost of said work made by . . . . chief engineers of said company, dated January 4, 1865, and hereto attached. . . . . Said estimates shall be made upon the report of the chief engineer of said company from time to time as the work progresses and materials are furnished as aforesaid, and which said engineer shall examine and report to the parties hereto as the said work progresses and materials are furnished, as aforesaid, giving accurate estimates thereof from time to time, as often as once per month if so required by the parties of the first part."

Cox, Myers, and Arnold, in March, 1865, entered into an agreement in writing with the engineer, who was to superintend the work for the company, and make the estimates provided for in the contract, and whose salary was to be paid by McLaughlin, by which they agreed to give to the engineer ten per cent of their profits upon their said contract with McLaughlin, in consideration for which said engineer agreed that as such engineer he would take pains in the location of the work and in laying it out so as to save as much work as possible to them, and make such changes as would make the work lighter. This agreement was kept secret, and was unknown to McLaughlin and his agents.

Estimates were made as provided in the contract by the engineer, based upon the alignment and profile, although both had been departed from.

The first four estimates so made were paid, less ten per cent reserved, within a few days after they were certified. The fifth, for $44,530.80, was made September 9, 1865, and a portion only was paid, leaving about $14,000 due. McLaughlin, who had been absent from the state

when the previous estimates were paid, then objected to the mode of making the estimates, claiming that they should have been made, not on the profile where the line of the road had been changed, but upon accurate estimates of the work actually done—made from time to time—by the engineer. The line of the road had been changed by the engineer so as to greatly diminish the amount of work to be done, yet in making the estimates he ascertained the proportion of the work done necessary to complete the road-bed for a specified distance, and then allowed for that proportion of the work which would have been required if the line had not been changed. It was claimed, for instance, that in the fourth estimate thirty-one road and farm crossings and $7,285 of masonry had been included, none of which were required in the new location; and in the fifth estimate a charge of $30,000 for tunneling when the line and grade of the road had been so changed as to avoid the proposed tunnel altogether.

This controversy was settled October 2, 1865, McLaughlin paying seven thousand dollars more, only on the fifth estimate. At that time a supplemental contract was entered into, in which it was provided that thereafter accurate estimates should be made monthly of the work actually done, as the basis for the progress payments, and it was stipulated "if the contract is at any time annulled by mutual consent, or the work under it entirely suspended by direction of McLaughlin, then in such case (but in no other event except upon the full completion of said contract) the said Cox and Arnold shall be allowed for all the work done up to that time, the amounts and quantities shown in said profile for the corresponding sections or·portions of said actual quantities of work performed."

The contract between Cox and Arnold and the engineer, it is said, was terminated about the time McLaughlin was expected to return from the East, after three or four estimates had been made. After the fifth estimate a new chief engineer was appointed.

Three other estimates were made. But between November 20, 1865, and June 5, 1866, no estimate was made, although plaintiffs insisted and repeatedly requested to have them made. May 5, 1866, however, $9,000 was paid without an estimate. The eighth estimate was made on June 5, 1866, for $35,254.83. On this $2,500 was paid in addition to the $9,000, leaving $23,754.83 still unpaid.

On the fifteenth day of June, ten days after the estimate was made, Cox and Arnold notified McLaughlin's agent that in consequence of the failure to pay the estimate they were compelled to suspend work entirely from that date, and would settle with him according to the terms of the contract.

McLaughlin, through his agent, promptly replied, denying the right to abandon the contract, and requesting Cox and Arnold to proceed with the work.

McLaughlin was at that time in New York, endeavoring to place the bonds he had received, or in some other mode to procure money to make these payments.

This court has, on former appeals, unmistakably held that the installments or progress payments, provided for in the contract, are not conditions precedent, the failure to perform which would justify plaintiffs in abandoning the contract, and enable them to sue for profits they would have made had they performed it, or for compensation at conventional rates. It was held that this did not constitute prevention or excuse the plaintiff from performance. For this breach plaintiffs had simply their right of action for damages.

Counsel now say they do not claim to have established technical prevention, such as this court has said the default to make the payments does not amount to; but they do claim that McLaughlin's failure incapacitated the plaintiffs to perform, and authorized them to consider it a consent to a rescission on the part of McLaughlin, which, if plaintiffs assented to, would justify them

in demanding payment at contract rates; that is, it is not *technical prevention*, but yet is prevention which will have the same effect. I do not understand this distinction. In fact, I think it is trifling with the rulings of the court. This court attached no importance to the word. It simply held that the failure to pay did not authorize Cox and Arnold to abandon the work and sue on the contract.

There certainly was no rescission by mutual consent. McLaughlin is not shown to have been insolvent and unable to perform. He did not entirely refuse to perform his part of the contract. Plaintiff apparently knew he was absent trying to realize upon his securities, to enable him to make the payments. Under such circumstances, it seems absurd to claim that by this temporary failure McLaughlin indicated an intention of abandoning the contract or of refusing to go on with it. This court has held that this failure was one which did not authorize plaintiffs to cease work and sue on the contract, but that their remedy was an action for damages. Of course it did not terminate the contract or authorize plaintiffs to rescind.

Undoubtedly there are cases which hold that a total failure of performance, which indicates a disposition on the part of one party to abandon the contract, or a refusal to go on with it, may be considered as a consent to a rescission; but where it is known that the party in default is struggling to perform, it would be as unreasonable as unjust to conclude from a temporary failure a consent to a rescission.

But if the charge of fraud be considered, it is equally plain to my mind that it constituted such a breach of the contract on the part of the plaintiffs as would of itself render it impossible for them to recover upon the contract.

The parties contracted for payments to be made upon the certificates of the engineer. He was to ascertain the

amount of the various kinds of work done, and to make the estimates upon which the installments were to be paid. The contract provided for changes in the alignment and grades, which would, of course, only be made upon surveys and recommendations of the engineer. Cox and Arnold secretly bribed this engineer by contracting to give him ten per cent of all the profits they might make. They say that for this interest the engineer was to take pains to locate the road so as to save as much expense as possible without injury to the corporation. Unfortunately, however, by the terms of the contract, the profits of the contract would be increased to the advantage of the engineer, as much by changes to the injury of the road as by those which were indifferent or advantageous. Had McLaughlin known of this corrupt bargain, it would plainly have been his duty to end the relation at once, and it is not clear that he would not be liable to the corporation for changes assented to by them only upon the advice of their confidential agent who had been secretly interested against them by McLaughlin's employees.

But I think, in addition to being a fraud for which equity could give relief, it was a clear violation of the contract.

The engineer to some extent occupied the position of a chosen umpire. He was to ascertain the proportion of the work performed, and upon his certificates the installments were to be paid. Certainly it was an agreement for a disinterested umpire, and clearly when one of the parties to the contract made the umpire a secret partner, he disqualified him from acting. He thereby rendered it impossible to perform the contract.

The finding that there was no fraud contradicts the other findings of fact, and is not only unsupported by evidence, but is as clean a traverse of all the evidence upon the subject as could be drawn. McLaughlin was injured by being deprived of the services of an impartial

engineer and umpire, and by risking the loss of his expenditures on the ground that the corporation would not be bound by alterations assented to under the advice of a corrupted engineer.

But while this is clearly so, it does not follow that plaintiffs could not recover the value of their work which had been received by McLaughlin to the extent to which McLaughlin had been benefited thereby, and not exceeding the contract price.

In my judgment, the allowance of the amendment setting up the claim for the actual value of the labor performed was, under the circumstances, an abuse of discretion, which ought to be reviewed by this court. This litigation has been pending for some sixteen years, during all of which time plaintiffs had been contending for compensation at the conventional rates fixed in the contract. During all this time defendant has contended that plaintiffs have been paid the full value of the services rendered and the materials furnished. Defendant, had he desired, could not have made an issue upon that question, because plaintiffs persisted in urging their unfounded claim for the contract rates. Not only so, but this contest has been kept up after most clear and explicit rulings of this court that no such action could be maintained, and intimations that plaintiffs' remedy, if they had any, was for the reasonable value of the labor performed and materials furnished. Now, even one who has a grievance owes some duty to his adversary and to society. Because he has been injured, he is not justified in vexing the wrong-doer with malicious litigation, nor can he persist for years in waging a suit which he cannot maintain, and then, upon being defeated, amend and recover that which for years he has virtually declined to accept, when the suit he might have brought has been barred by the statute.

Here, before this amendment was asked, the suit upon a *quantum meruit* had been barred seven times over. It

may be admitted that, if made in time, such an amend-
ment would have been proper. Courts are now very
liberal in allowing amendments. It is often only a
question as to whether the plaintiff should be put to the
expense of bringing a new suit. But because the courts
are liberal in allowing amendments, parties cannot
thereby be deprived of a defense to what is really a new
cause of action. If barred when the amendment is
asked, it should not be allowed.

This was a new cause of action. It was founded upon
a different contract from that alleged; it was for services
and materials differing in amount and differently classi-
fied. One is for actual services, and the other, though
not in form, yet in reality, largely for services and ma-
terials only constructively done and furnished. The
evidence required to sustain the two actions differs
materially.

On former appeals this court has held that the action
was not brought upon the implied promise to pay for the
actual value of the work, but was an action upon the con-
tract to recover for the part performed according to an
arbitrary and conventional standard found in the specific
contract, and the precise ground upon which they claimed
the right to recover was, that they had been prevented
by the defendant from performing. Prevention consti-
tuted a part of their cause of action.

Here if they can recover at all, it is upon the ground
that the defendant has been guilty of a breach of the
contract on his part, in consequence of which he cannot
insist upon the performance on the part of plaintiffs,
and that, therefore, plaintiffs can abandon the contract
and sue for the actual value of the service rendered, and
the defendant cannot defeat the action because of the
non-performance of the specific contract simply because
he was first in default himself. In such a suit the spe-
cific contract cuts no figure except as evidence. It is
evidence that the work was performed at the instance

and request of the defendant; and as the plaintiff cannot by refusing to perform recover a greater price for his work than he would have been entitled to had he fully performed, the contract price will constitute a limit to his recovery. The contract may also, in a proper case, furnish evidence by way of admission, of the value of the services. But in no sense is this an action upon the specific contract. To the contrary, if that can be established as still subsisting, that fact will defeat the action upon the *quantum meruit*.

Admitting, however, that the amendment was properly allowed, and that the claim was not barred by the statute of limitations, is there any evidence whatever in the record to support the finding that the actual value of the work and labor done in constructing twenty miles of the railroad was $275,304.07? or that the actual value of the labor performed and materials furnished in the construction of the twenty-first mile was $28,214.42?

It is a circumstance of some significance that the plaintiff upon the last trial, which was the first under a complaint claiming the actual value, put in no new evidence upon the subject. All his evidence consisted in reading from the testimony given on former trials where the specific claim was to recover compensation at contract rates for the profile quantities. And as it is shown without conflict that much of the profile work was never done, it is literally true that in an action upon a *quantum meruit* plaintiff has recovered upon proof of the value of labor not done and for materials not furnished. The proof was as to the value of contemplated work delineated upon a profile which the contract stipulated might be departed from, and which, in fact, was not followed, but was intentionally departed from, the work actually done being upon a new survey upon another and a distinct line.

It is claimed, and numerous authorities are cited to the point, that where a specific contract has been partly

performed and abandoned, under such circumstances that the contractor may sue for the work actually performed, the contract rate of compensation governs even in the suit for actual value. That such rates generally constitute *prima facie* evidence of the value of the services, by the way of an admission of the parties, is not disputed. But it would be so only when, under general rules applicable to admissions, in reason and justice, such stipulation is an admission of the actual and reasonable value of the service rendered. There is no iron-clad rule that it should constitute an admission, however plainly it may appear that it was in fact no admission.

It is true that prior to the contract a profile of the projected road had been made showing the estimated amount and character of work and materials required, and that when the contract price was agreed upon the engineer affixed to the specifications prices for the different kinds of work and materials which should govern as to progress payments, and which in the aggregate amounted to just nine hundred thousand dollars, the contract price. It was also stipulated that the profile might be departed from and a new alignment and grade fixed by the corporation; that the road should be constructed according to such changed alignment, but there should be no change in the compensation. The contract price was to be paid, no matter what changes were made. If changes were made, therefore, this amounted to an express stipulation that the payments should not be made upon the basis of the reasonable and actual value, but upon a conventional standard, expressly ignoring actual values. When the plaintiff brought suit upon a *quantum meruit*, he expressly waived the benefit of this stipulation. It is in its very nature inconsistent with a *quantum meruit*. It was a speculating contract, in which both took the chances of making or losing, but each expressly stipulated that the actual amount of work done should not affect the compensation.

The evidence shows, without contradiction, that the profile was widely departed from. Indeed, the diagram exhibited, and the correctness of which as to the alignment and grade is not contradicted by any evidence, shows that where the heavy work was done the coincidences of the profile and the actual location are hardly more than the crossing of different lines. Under such circumstances, the profile was not even *prima facie* evidence of the work actually done. When the changes were shown, it became as irrelevant as would be the profile of a road in China or Timbuctoo. The fact that the two alignments were near each other cuts no figure. The country was hilly, the surface constantly changing. The engineer states in explanation of his secret engagement with Cox and Arnold that the change of a few feet would make a material difference in the amount of work to be done.

It is claimed that Arnold and Cox have testified as to the reasonable value. Arnold died before suit was brought upon the *quantum meruit*. His evidence was in regard to the conventional rates, which he said was fair compensation for the work. He did not pretend to know the work actually done, and his whole testimony shows that he estimated it from the profile. For instance, he testified as to the twenty-first mile that four fifths of the work had been done, and his mode of arriving at this conclusion was this: The mile could be completed for ten thousand dollars, and the profile rate would be fifty thousand dollars. As the location had been altered, this might be true, although but one thousand dollars of the work had been actually performed upon this mile.

Cox's testimony still more plainly refers to contract rates. He admits he did not know the amount of work actually done, and when questioned says: "We were not working by the yard." He fixed the amount due at one hundred and seventy-three thousand dollars before he commenced suit at all; and his testimony was read from

the evidence given at a former trial, when the suit was confessedly for contract rates. Evidently the plaintiffs only intended to testify to the fairness of the contract. But perhaps we may suppose they had been taught to believe that the profile afforded the best evidence of work actually performed, since they still insist upon that proposition, and their attorneys here insist in most elaborate briefs that the profiles showing work which it was agreed might not be done, and which confessedly was not done, and in a contract which expressly stipulated that compensation should not depend upon the amount of work done or materials furnished, constitutes the best evidence of work actually done and of materials actually furnished—in a suit not upon the contract, but upon a *quantum meruit*.

The learned judge before whom the case was tried is reputed to have based his estimate upon the evidence of defendant's witness, Stangroom, who had made a recent survey and estimate of the work, so far as he thought Stangroom's work reliable. But where, from lapse of time, he thought a present estimate could not be fairly made, he followed the profile.

If the learned judge did this, he followed the evidence where he thought it trustworthy, and where no evidence was forthcoming he followed the profile, which we have seen was entitled to no weight at all,—that is, he found without evidence. The burden was upon the plaintiff. If he were unable to establish his case by competent evidence, he was no worse off than plaintiffs often are; but this fact did not shift the burden. If he cannot prove his case he cannot recover.

But this proposition emphasizes the argument against the propriety of allowing the amendment and the bringing in of a new cause of action after time has effaced the evidence necessary to sustain the plaintiff's present contention, or essential to enable the defendant to make a just defense.

It is emphatically a case where, having made his own bed, the plaintiff should lie in it. Having persisted in a claim for years after he was distinctly told he could not recover upon that basis, he should not now be permitted to recover upon a new theory, when time has destroyed all evidence.

Holding these views, it is not necessary to review the other points made.