[Civ. No. 7630. First Appellate District, Division One.—November 27, 1931.]

FRANK L. BARRIS, Respondent, v. ATLAS ROCK COMPANY (a Corporation), Appellant.

Marshall Nuckolls, A. S. Glikbarg and Glikbarg & Wolf for Appellant.

George N. Crocker, Travers, Landels, Weigel & Crocker for Respondent.

THE COURT.—This appeal was taken from a judgment upon a verdict of $9,095.49, damages for breach of contract.

On June 27, 1929, the respondent agreed to do certain hauling for the appellant, between Black Oak and the site of the Lyons Dam, in Tuolumne County, which dam was under construction by the Pacific Gas and Electric Company. There was delay in getting the work under way, which was unsatisfactory to the respondent as it would postpone a considerable part of his hauling until the rainy season, and on September 25th his attorney wrote to the appellant voicing this grievance, as well as complaining that an alleged promise, that certain road repairing and widening would be done, was unfulfilled, threatening to cease work entirely unless a new arrangement could be made for payment on a daily rental basis and, in fact, suggesting a new rate per truck. This letter was followed by another on the 28th claiming a default for nonpayment of the installments, a subject not mentioned in the first letter. The respondent stopped work on the 25th. He had earned $1335.49 at contract rates, upon which nothing was paid and he filed the complaint herein, setting up two distinct breaches, the first based upon failure to pay the $1335.49, whereby, he alleged, he "was left without the necessary funds to continue the work" and "prevented, entirely by reason of the fault of the defendant, from continuing the work" and fully performing it; and the second, upon the failure to do road work which, it was alleged, the appellant had orally agreed to do, to facilitate respondent's operations. This, too, it was alleged, had prevented full performance. The prayer demanded $1335.49, plus $1260 for sixty-three days' waiting time at the contract rate of $20 a day, and $6,500 loss of profits; $9,095.49 in all.

Respecting the first alleged breach, the appellant admits that the $1335.49 was earned, but nevertheless contends that its obligation to pay had not matured, under the terms of the contract, when respondent stopped work and, consequently, that it was not in default. The appellant contends, moreover, on the authority of *Cox* v. *McLaughlin,*

54 Cal. 605; Id., 63 Cal. 196; Id., 76 Cal. 60 [9 Am. St. Rep. 164, 18 Pac. 100] (see, also, the same case, *Cox* v. *Western Pac. R. Co.*, 44 Cal. 18; Id., 47 Cal. 87, and *Cox* v. *McLaughlin*, 52 Cal. 590), that even if such breach be conceded, it did not constitute, in law, a "prevention"; that therefore this action on the contract, for damages, will not lie, but that respondent's remedy is upon a *quantum meruit*. We are satisfied that this position is well taken, and in this discussion we shall assume (for the purposes of the discussion only) that there was such breach.

The contract binds the respondent "to furnish all trucks, labor, materials, machinery and appliances necessary for and to load, unload, haul, transport and deliver . . . all sand, gravel, rock, cement, materials, equipment and supplies" between the points named, the work to start July 1st and to finish December 1, 1929. On its part, the appellant agreed to pay semi-monthly for this work, at stated rates per ton, but there was no provision making continued performance of work or hauling conditional or dependent upon punctual payment for past work or hauling. The respondent simply agreed to haul and the appellant to pay, neither covenant being linked to the other, but each quite independent. For example, there was no language such as that found in *Woodruff Co.* v. *Exchange Realty Co.*, 21 Cal. App. 607, 610 [132 Pac. 598, 599], where the defendant agreed to " 'advance on Saturday of each week . . . the moneys to carry on such work; pay for the material and labor, the accrued commissions and other costs' ". Nor was anything said or done by the appellant indicating an intention to renounce or repudiate the contract, to go no further with it, or to prohibit or reject further performance by respondent, within the rule of *Hale* v. *Trout*, 35 Cal. 229. There was simply a failure to pay the bills. This being so, we see no distinction between this case and that of *Cox* v. *McLaughlin, supra,* where the defendant failed to make progress payments under a construction contract, whereupon plaintiffs stopped work and sued on the contract for damages, persistently and repeatedly seeking, without success (63 Cal. 196, 204), to establish the principle that such nonpayment, in itself, constituted "prevention". There was a finding in that case that the defendant knew that the plaintiff relied upon the installments to pay for their labor

and materials and that, because of the default, they could not carry on. But the contract contained no condition precedent expressing such dependence, and in that behalf (52 Cal. 590, 595) the court said: "the language that the defendant neglected and refused to pay, 'well knowing that plaintiffs had to rely on the moneys received from him', adds nothing to its effect". We have dwelt upon this because, while the contract here is similarly silent on the subject, the complaint is not; it alleges that the default left plaintiff without necessary funds to continue the work, and that there was, therefore, prevention.

The rule laid down in *Cox* v. *McLaughlin, supra,* is that, in the absence of outright renunciation (e. g.; *Hale* v. *Trout, supra*), or contractual language making further and continued performance conditional and dependent upon punctual payment, mere nonpayment of an installment by one party, before the completion of the work, does not constitute prevention of further performance by the other; further, that such failure is a breach justifying an action upon a *quantum meruit* (for the reasonable value of the work actually done), but it does not give rise to a cause of action on the contract for damages. In such case it is clear that a plaintiff cannot allege and prove either performance or prevention. There has been no departure from this rule in this state. (*San Francisco Bridge Co.* v. *Dumbarton Land & Imp. Co.,* 119 Cal. 272 [51 Pac. 335] ; *Porter* v. *Arrowhead Reservoir Co.,* 100 Cal. 500 [35 Pac. 146]. See, also, *MacRae* v. *Heath,* 60 Cal. App. 64, 78 [212 Pac. 228] ; *Laiblin* v. *San Joaquin Agr. Corp.,* 60 Cal. App. 516, 531 [213 Pac. 529] ; *Beck* v. *Schmidt,* 13 Cal. App. 448, 451 [110 Pac. 455].)

The respondent cites no authority in opposition to the rule of *Cox* v. *McLaughlin, supra,* but contends that the appellant cannot now question, for the first time, the propriety of the respondent's choice of remedies, which brings us to a consideration of the demurrer. The complaint in one count alleged two distinct breaches by prevention of performance; the first, failure to pay based upon the written contract; the second, failure to repair and widen the road, based upon an alleged oral agreement. A special demurrer was interposed upon the ground that these two causes of action were not separately stated and if it

had been sustained, the separation would have enabled the appellant to test the sufficiency of the new complaint as to each. As has been said, the nonpayment breach gave rise only to an action on a *quantum meruit*. The appellant was entitled to have this separately stated and, once that was accomplished, a demurrer would have directly raised the issue whether the facts stated showed "prevention". (*Cox* v. *McLaughlin, supra.*)

The only breach upon which respondent could have then relied to support his action for damages would have been the road breach. The demurrer could not have been properly sustained on the general ground, for the complaint, read as a whole, stated a cause of action. But clearly it should have been sustained on the special ground and if that had been done the issues would have been greatly simplified at the trial, if not before.

The answer denied that nonpayment "prevented" performance and the respondent was not, therefore, taken by surprise when, on appeal, the appellant invoked this rule of substantive law which, because its demurrer was overruled, it had no opportunity to fully invoke at the threshhold of the case.

The discussion respecting the first alleged ground of prevention assumes that the nonpayment constituted a breach; but it is not necessary to this decision to determine that and in view of the remanding of the case, nothing said herein is to be taken as passing upon that question. There is enough in the record, however, to raise a serious doubt on that score. The agreement in question was a subcontract and it recites an antecedent contract between the Pacific Gas and Electric Company and appellant, with the terms of which the respondent admits he is "fully conversant". The contract in suit largely adopts the language of the antecedent contract in that it provides that within five days after the fifteenth and first days of each month the respondent shall submit to the appellant's representative a written statement of the amount of hauling during the preceding half month, "and the company will issue its check therefor in the same manner as provided for payment" in the underlying contract, which was as follows: "The company's representative will thereupon check the same and prepare a written certificate setting forth 92½ per cent of

the estimated value of the sand and gravel delivered, and of work performed hereunder, during said preceding one-half month, and shall deliver the same to the contractor in ample time to permit the contractor to obtain payment thereon as herein provided. The contractor shall thereupon present such certificate to the company and thereupon the company shall pay to the contractor, on or before ten (10) days after the said contractor's submission of its written estimate. . . . "

Eleven bills were introduced in evidence in the sum of $1335.49. Four are dated September 30, 1929, and aggregate $487.36, as to which, seemingly, there could be no default until October 10th, well after respondent quit work. Two are in August for $105.11. The remainder run from September 16th to 19th and aggregate $743.02, as to which there could seem to be no default until September 26th at the earliest. If these be taken to be "written statements" within the meaning of the contract, they were subject to a "holdback" or retention of seven and one-half per cent under the contract, and a further retention of seven and one-half per cent in lieu of a $30,000 bond which the appellant. agreed to dispense with.

The testimony is not altogether clear as to just when these bills were delivered to the appellant. That date would set the ten-day period running and, until that period expired, the appellant could not be in default in its payment. Even if in default, such default, as has been seen, would not constitute "prevention". This much is certain, however, that such provisions in a contract are conditions precedent to the obligation to pay, and performance of them must be alleged and proved. (*Cox* v. *McLaughlin,* 63 Cal. 196, 206; *Loup* v. *California S. R. R. Co.,* 63 Cal. 97; *Holmes* v. *Richet,* 56 Cal. 307 [38 Am. Rep. 54]; *Coplew* v. *Durand,* 153 Cal. 278 [16 L. R. A. (N. S.) 791, 95 Pac. 38]; *Gray* v. *Cotton,* 166 Cal. 130, 134 [134 Pac. 1145].)

Likewise it is not necessary to pass upon the question of the oral agreement for the widening and repairing of the road. Upon that phase we assume the complaint will be amended, and whether the respondent will then elect to stand upon the claimed oral agreement itself or will rely upon the promise which, on this appeal, it is claimed may be implied from what is in the written agreement, will determine how

that should be disposed of. Nor need anything be said herein with respect to the proof of loss of profits, or whether the claim for delay or waiting time was waived.

Nothing said herein is to be construed as limiting respondent, in his action upon a *quantum meruit*, to recovery based upon the contract rates. He may recover whatever he proves the services to be reasonably worth. (*Laiblin* v. *San Joaquin Agr. Corp., supra.*)

The judgment is reversed with directions to the trial court to sustain the demurrer with leave to amend, and thereafter for such proceedings as are not inconsistent herewith. It is so ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 26, 1931, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 25, 1932.