[Civ. No. 2517. Third Appellate District.—January 22, 1923.]

C. H. LAIBLIN, Respondent, v. SAN JOAQUIN AGRICULTURAL CORPORATION (a Corporation), Appellant.

[1] CONTRACTS — LEVELING AND CHECKING OF LAND — PROGRESS PAYMENTS—WORK DONE—CONSTRUCTION.—Where a contract for the building of levees and reservoirs upon and leveling and checking certain lands provides that monthly payments "shall be made not later than the tenth day of each month for the work done during the previous calendar month," and does not, in express language, provide that the work shall be done in accordance with the specifications and requirements of the contract before the contractor shall be entitled to the progress payments, the contract will be construed as entitling the contractor to payment for the work done during each calendar month whether the same did or did not in-

volve a completion of such work within the requirements of the contract.

[2] ID.—CONSTRUCTION BY PARTIES—WEIGHT.—While a practical construction of a writing by the parties thereto is not by any means conclusive as to the correct construction of the instrument, such construction is entitled to great, if not controlling, weight in determining its proper interpretation, where the language requiring interpretation may be characterized by more or less ambiguity or uncertainty.

[3] ID.—FAILURE TO MAKE PROGRESS PAYMENT—SUBSTANTIAL BREACH —RESCISSION—QUANTUM MERUIT.—The statements presented by plaintiff having correctly shown the amount and character of the work done by him, the failure of defendant to make the monthly payments for the work therein shown to have been done, in accordance with the terms of the contract, constituted a substantial breach of the contract by defendant, and justified plaintiff in refusing to proceed further thereunder; and plaintiff was authorized to proceed against defendant upon a *quantum meruit* for the reasonable value of the labor or services performed.

[4] ID.—REASONABLE VALUE — EVIDENCE — EXPERT TESTIMONY.—The action being upon a *quantum meruit,* it was proper to allow evidence as to the reasonable value of the labor performed; and it was competent to prove what was the reasonable value of such labor by the opinions of experts fully qualified to give such testimony.

[5] ID.—RESCISSION — AMOUNT OF RECOVERY — EVIDENCE — INSTRUCTIONS.—Plaintiff, having rescinded and abandoned the contract because of the breach thereof by defendant, was not limited to the contract price as the measure of what he was entitled to recover; and the trial court did not err in admitting evidence of the value of the services in excess of that fixed by the contract and in instructing the jury that the contract price did not constitute the criterion for determining what the plaintiff was entitled to recover.

[6] ID.—DETERMINATION OF DEVIATION—CONSTRUCTION OF CONTRACT. Where a contract for leveling and checking land for the purpose of irrigation provides that "each check shall be graded to a smooth and uniform surface and all holes shall be filled to the level of the check with a maximum deviation of two-tenths of one foot," in determining the maximum deviation such deviation should be ascertained with reference to a datum-line, that is, a common level, and not with regard to the distance from the highest point to the lowest point.

[7] ID.—FORM OF STATEMENTS—ESTOPPEL.—The contract not having specified any particular form of statement to be furnished by plaintiff to defendant, and the statement of work done during the third and fourth months of the year having been sufficiently clear as to the amount and the character of work done as to have

enabled defendant's engineer without difficulty to check them and so compute and determine whether they were correct, and such statement having been substantially the same as the one presented to and accepted by defendant for the work done during the first and second months, the contention that such statement was not in proper form was without any substantial ground for its support.

[8] ID.—CONDITIONAL OFFER OF PAYMENT — REFUSAL — RESCISSION — QUANTUM MERUIT.—The offer of defendant to advance to plaintiff an amount of money equal to the total amount called for by plaintiff's statement, provided plaintiff would sign a written acknowledgment that the work had not been completed in accordance with the specifications of the contract, did not constitute an offer of payment, and plaintiff had the right to refuse it, and his act in doing so did not constitute a bar to his right to abandon the contract and sue upon a *quantum meruit* or upon the contract itself if he had so elected.

[9] ID.—REFUSAL TO SUBMIT TO ARBITRATION—RIGHT TO RESCIND.— The provision in the contract for the submission to arbitration of any controversies arising between the parties with respect to the contract not having either expressly or by necessary implication stated that in such instances arbitration should be a condition precedent to the right of plaintiff to demand and receive the progress payments provided for in said contract, the offer by defendant to plaintiff to submit their controversy to arbitration, and the refusal of plaintiff to accept the offer, did not affect or impair the right of plaintiff to rescind and abandon the contract.

[10] ID.—PERFORMANCE OF WORK—PRIOR STATEMENTS OF WITNESS— IMPEACHMENT.—The president of the defendant company having stated to a third party, in the course of negotiations between them for the leasing to the latter of a portion of the tract of land contracted to be checked and leveled by plaintiff, that the entire acreage had been leveled and checked, evidence of such statement was admissible for the purpose of impeaching his testimony on the stand to the effect that none of the work had been done by plaintiff as required by the contract.

APPEAL from a judgment of the Superior Court of Madera County. E. N. Rector, Judge Presiding. Affirmed

The facts are stated in the opinion of the court.

Everts, Ewing & Wild and T. M. Stuart for Appellant.

Fee & Ring, W. C. Ring, Jr., and Gallaher, Simpson & Hays for Respondent.

HART, J.—The plaintiff brought this action to recover from the defendant the sum of $18,991.69, claimed to be due him for work or services performed by him for the defendant in building levees and reservoirs upon and leveling and checking certain lands owned by the latter and situated in the county of Madera. The services for which the plaintiff here seeks compensation were performed in pursuance of the terms of a written contract entered into by and between the parties to this action on the seventeenth day of January, 1920. The aid of a jury was invoked and a verdict returned in favor of the plaintiff for the sum of $10,071.69. Judgment was entered accordingly and from said judgment the defendant appeals.

The lands upon which the services were to be performed were, for the purposes of the contract, subdivided into three different tracts and designated in the agreement as Tracts One, Two, and Three. Tract One contains 100 acres, more or less; Tract Two 110 acres, more or less, and Tract Three 480 acres, more or less.

The provisions of the contract important to the present inquiry may summarily be stated as follows: That the work was to be done according to a certain diagram "on the plats . . . of said land, prepared by the first party" (defendant); that the plaintiff was to furnish his own equipment, machinery, etc., and help for doing the work; that the defendant was to pay the plaintiff for the services performed as follows: For leveling and checking said lands $30 per acre; for the construction of certain of said levees, ditches, and reservoirs twenty-five cents per cubic yard, and for the construction of one particular reservoir thirty cents per cubic yard. It is further provided in the contract that "each check shall be proven level by flooding the same with water and that, if after said flooding, any check does not comply with the specifications of this contract, it shall be re-leveled by the second party at his own cost and expense until it does comply with the requirements of the specifications of the contract. The work of flooding shall be done by said first party, but it is further understood and agreed that the work of proving said checks shall not be done so as to delay second party from undertaking other work after he has completed this contract or delay the second party from moving his outfit, and if such work does or will cause such delay,

then it is understood that the last fifty acres to be tested
and proved shall be tested by surveying the same instead of
by flooding.'' It is further provided that there shall be
made by the defendant to the plaintiff progress payments
which must be made not later than the tenth day of each
month for the *work done* in the previous calendar month; that
''the amount of said work during any month to be settled
by statement presented by said second party to first party
and by said first party checked and approved, but it is
further expressly understood and agreed that the said first
party shall retain ten per cent of the payments due for each
month's work until the final completion of the work and
thereafter until satisfactory evidence of the payment of
all claims for labor and material has been presented by said
second party to first party, and said ten per cent shall be
paid to second party upon the expiration of the time allowed
by law for filing liens or before said time, provided that the
second party presents to the first party satisfactory evi-
dence that all claims for labor and material have been
fully paid.'' By the contract the first party reserves the
right to pay out of the said ten per cent any claims for
labor and material duly presented to it and not contested
by said second party, the same to be deducted out of the
amount remaining due to second party. It was agreed that
the second party shall proceed within ten days after the
execution of the contract with the performance of all the
work set forth and specified in said agreement ''and to con-
stantly employ for this purpose not less than sixty horses
or mules and a sufficient and ample supply of drivers for
the same, and to use and employ in said work such other
equipment as may be usual or proper in the performance of
the work specified in this contract, and to keep at least sixty
head of stock constantly employed on said work, so far as
the weather will permit, until the work called for in this
contract is entirely completed.'' The contract proceeds:
''It is further mutually understood and agreed that any
dispute between the parties hereto arising from any matter
covered by this contract shall be submitted to a board of
arbitration for determination, said board to consist of three
(3) members, one to be selected by each of the parties hereto
and the said two arbitrators to select the third.''

Other provisions of the agreement will be hereafter referred to, if necessary to the discussion of the points presented for decision.

The plaintiff on the twenty-fifth day of January, 1920, proceeded with the execution of the terms of said contract and remained on the lands with his equipment until May 5, 1920, when he ceased further work, abandoned the contract and removed all his horses, machinery and other equipment from the premises. All the work done by him in pursuance of the terms of the contract was upon Tract Three, no work having been done by him on Tracts One and Two.

The amended complaint is in two counts, the first cast in the form of a common count, as upon a *quantum meruit.* In said count it is alleged that the plaintiff within "two years last past, at the special instance and request of defendant corporation, did furnish said defendant with work, labor and services in the leveling and checking of certain lands belonging to defendant and in the construction of certain levees, ditches and reservoirs thereupon," etc., which work, labor, and services, it is alleged, were then and there and now are of the reasonable market value of $24,643.05. It is further alleged that the defendant has paid upon said amount the sum of $6,128.31 only and that there now remains owing, due, and unpaid the difference between the last-mentioned sum and the sum sued for, to wit, $18,514.74, which, it is alleged, the defendant has refused to pay to plaintiff, although often requested to do so.

The second count is upon the contract, the substance of which and the refusal of the defendant to comply with its terms are pleaded and alleged. It is unnecessary to reproduce herein the facts set forth in the second count, since the plaintiff was required, on the opening of the trial, to make an election as between the two counts of his complaint upon which he intended to rely and thereupon elected to rely upon the first or the common count. This eliminated from the case the second count of the complaint and, therefore, renders said count a matter of no consequence in the consideration of this appeal.

Copy of the written contract between the parties was attached to and made a part of the complaint, and also with the amended complaint the plaintiff served and filed a bill of particulars, specifying the items making up the general

sum for which he here sues. This bill of particulars included, of course, the notation of a credit of $6,128.31, paid by the defendant to the plaintiff.

The defendant interposed a demurrer to the amended complaint upon general and special grounds and the same was overruled by the court. Thereupon defendant filed an answer and also a cross-complaint. The answer consists of denials and admissions of certain of the allegations of the complaint. The cross-complaint charges that the plaintiff failed in a number of enumerated particulars to comply with the terms of the contract. Among the assignments of the default of the plaintiff in this respect are these: That the plaintiff at all times during the period that he performed work upon the lands under the contract had less than sixty head of horses or mules working upon the same; that he failed to complete the work of leveling and checking the land and constructing the ditches and reservoirs according to the terms of the contract and that he did not finish or complete any of the work called for by the agreement; that prior to the execution of said contract between the parties hereto the said lands of cross-complainant required checks, levees, reservoirs, and leveling, so that cross-complainant could use the same to produce alfalfa successfully, "and this defendant fully advised the plaintiff that the purpose for which it desired to have said lands leveled and checked, and the purpose for which it desired to employ the said plaintiff to do all the work set forth in said contract, was to prepare said lands and put the same in a condition so that the defendant could raise alfalfa successfully thereon, and that the said plaintiff signed said contract and commenced said work, knowing full well that such was the purpose of the said work, and also knowing full well that if the said lands were not leveled and checked and if the said ditches, levees and reservoirs were not completed in accordance with the terms of said contract, the said defendant would be unable to use its said lands to produce alfalfa successfully thereon." It is further alleged that by reason of the failure of the plaintiff to level and check the said lands and to construct the ditches, levees, and reservoirs called for by the contract, "and by reason of his failing to furnish the number of mules and men specified therein, and to comply with the terms and conditions set forth in said contract,

defendant herein has been damaged by reason of said lands not being so leveled and checked, ditches constructed and reservoirs built, . . . in that defendant has been unable to raise any crops of alfalfa on any of the land covered by said contract and the defendant's said lands are not in the condition for planting as they would have been in were said contract complied with, and hence the defendant has lost the rental value thereof, all to its damage in the sum of $30,000." It is alleged that the defendant has been damaged in the sum of $17,000 because of the failure of the plaintiff to comply with the terms and the conditions of said contract, which sum of $17,000 it is alleged "it would cost said defendant, according to the amount provided in said contract, to complete the work which said plaintiff herein has refused and neglected to so complete all in accordance with the said contract." The defendant further alleges that it is willing and able to fully pay to the plaintiff for all work and service completed and rendered by him in accordance with the terms and the conditions of the said contract. It is further alleged that the "defendant did, in writing, prior to the said plaintiff removing his stock and implements from said land and prior to his ceasing work thereon and after demands had been made upon the defendant by plaintiff for moneys which defendant claims and alleges herein are not due from defendant to plaintiff, offer to submit, in accordance with the terms and the conditions contained in said contract, the controversy between the plaintiff and the defendant, to arbitration, and in so making said offer in writing this plaintiff refused to submit the same to arbitration."

The plaintiff filed an answer to the cross-complaint, admitting the execution of the contract and that the work performed by him was undertaken by him by virtue of and in accordance with the terms and the conditions of said contract and denying that he breached said contract as alleged in the cross-complaint. Paragraph II of the answer states in detail the grounds upon which plaintiff refused to proceed with the work and demanded payment for the labor performed by him under the contract up to the time of the abandonment thereof. It is therein alleged, in substance, that the plaintiff, on the first day of March, 1920, presented the defendant a statement in writing setting forth

in detail the amount of work done by plaintiff in the months of January and February, 1920, payment therefor being due, under the contract, on the tenth day of March, 1920; that defendant did not pay for said work until after the nineteenth day of March, 1920, at which time said payment was made; that plaintiff thereafter notified defendant in writing that he did not consider himself required to proceed with the said work, unless defendant furnished plaintiff with security for future payments as required by the contract; that no such security was ever furnished by defendant. The answer proceeds to allege that a statement in writing was presented to defendant on the first day of April, 1920, showing the work done in the month of March of that year, but, although the payment for the work so shown to have been done was not paid on the tenth day of April, 1920, at which time it became due, the amount due for said work has not since been paid plaintiff and that defendant has at all times refused and "still refuses" to pay for the work so shown to have been done; that plaintiff continued work under the contract until the latter part of April, 1920, when he presented defendant a statement of work done in the month of April, 1920, and also demanded of plaintiff payment for the work done in March, 1920; that defendant refused "and still refuses" to pay for the work done in either the month of March or the month of April, and failed to furnish plaintiff security as by him demanded; that, in the latter part of April, 1920, plaintiff ceased to perform work under the contract and made preparations for moving his equipment from the premises; that the offer of defendant to plaintiff to arbitrate their differences was not made until after the former had ceased doing work under the contract and had made preparations to move and had actually commenced moving his equipment from the premises referred to in the contract; that defendant was, during all of said times, familiar with the demand and claim of plaintiff, but never informed the latter "wherein it differed with [from] said plaintiff" as to said demand and claim. It is further alleged that, after discontinuing said work as aforesaid, and before any offer was made to arbitrate by defendant to plaintiff, the latter notified defendant that he rescinded the contract, and demanded of defendant payment in full for all work done for which payment had not been made as indi-

cated by the written statements of the same presented to the
defendant by plaintiff.

There are some eleven or twelve points specifically urged in
support of a reversal, but most of these are subsidiary to
what is, in fact, the main or principal proposition, to wit:
That the verdict is insufficently supported.   The solution of
this proposition hinges, to some extent, upon a construction
of certain provisions of the contract.

A statement of the specific contentions of the defendant
may be condensed as follows: That the work for which plain-
tiff demanded payment, as also was true as to the work for
which he had already been paid, was not done in accordance
with the specifications of the contract; that the plaintiff, al-
though demanded by the defendant to complete the work thus
far done in conformity with the specifications and require-
ments of the contract, refused to do so; that the defendant
offered to pay plaintiff on April 10th for the work done in the
month of March, as shown by the statement presented on the
1st of April, but the latter refused to accept the same; that
the plaintiff refused to present proper statements of the work
claimed to have been done by him.   It is insisted that, for
all these reasons, the plaintiff breached the contract, and,
consequently, without justification or right rescinded and
abandoned the same.   Upon these propositions, it is con-
tended and argued that it was not competent for the plain-
tiff to declare on a common count or *quantum meruit,* and
that the court, having permitted evidence to be introduced
on the theory that the action was properly brought upon a
*quantum meruit,* erroneously allowed evidence as to the
reasonable value of the work done by the plaintiff or with-
out regard to the contract prices, the contention being in
this connection that, having himself violated the terms of
the agreement, whatever compensation or damages the plain-
tiff might be entitled to recover were to be determined solely
upon the basis of the contract prices.

In addition to the above points it is contended that the
court allowed the plaintiff to prove a certain admission made
by the defendant's president, J. W. Goodwin, upon the
erroneous theory that such admission involved a declaration
against interest.   There are also some other points made by
the defendant to which we will give brief attention.

As hitherto stated, the plaintiff, in the latter part of January, 1920, assembled upon the premises which were to be improved under the contract the necessary equipment for the execution of the terms thereof and started work thereon; that, owing to the fact that the plaintiff commenced the work in the latter part of January, there was comparatively little work done during that month; and that because of that fact he presented no statement to defendant disclosing the amount of work done until the second day of March, 1920, when he presented a statement which covered all the work done during the months of January and February, particularizing therein the character and amount of work done. This statement showed that the total amount of work done in the months of January and February equaled, when measured in money, the sum of $6,811.40. Against this was a debit of $1,108.31 for approximately forty-four and one-half tons of hay furnished the plaintiff by defendant and also deducted therefrom was the ten per cent which the contract provides should be retained by the defendant for the protection of itself against liens for labor, material, etc. Said statement was checked and approved by the defendant's engineer and the sum shown by the same to be due the plaintiff as a progress or a monthly payment was paid on the nineteenth day of March, 1920. Because of the fact that the defendant failed to make the payment shown to be due by said statement on the tenth day of March, on which day in each month the contract provides progress payments shall be made, the plaintiff demanded of the defendant in writing that it forthwith furnish him with security for such future progress payments as might become due, and that unless it did furnish such security the plaintiff would not consider himself obligated further to proceed with the work called for by the contract. No such security was furnished by the defendant at any time. On the first day of April, 1920, the plaintiff prepared and presented a statement in writing to defendant disclosing the amount and character of work done in the month of March of that year. The defendant, claiming that the work for which such payment was demanded, as well as portions of the work done in the months of January and February for which payment had already been made, was not done in accordance with the specifications of the contract and also claiming that the

amount paid to the plaintiff for the work done in the months of January and February was in excess of that to which the plaintiff was rightfully entitled, refused to pay the plaintiff the amount shown to be due in the statement presented by the latter for work done in the month of March. This led to a controversy between the plaintiff on the one side and the president and superintendent of the defendant on the other with regard to whether the work already done by the plaintiff accorded with the specifications and requirements of the contract, the defendant claiming that it had made a water test and had found that the portion of the premises upon which work had been done had not been properly leveled and that certain levees and a reservoir had not been constructed in conformity with the specifications of the agreement. The plaintiff, while insisting that he was entitled to progress payments, whether the work was or was not completed according to the requirements of the contract, also maintained that the work thus far done had been in all particulars as the contract specified. However, upon insistence by the defendant's agents, plaintiff did certain releveling of the lands upon which he had bestowed labor but the defendant still maintained that all the land had not been properly leveled and insisted that the defendant should complete the leveling of so much of the land as he had already bestowed labor upon in that particular before it would pay the demand contained in the statement of March 1st. The plaintiff, in reply to this proposition, stated that he had leveled the land as the contract specified and that he did not propose to go over it again. He further claimed that, if the land was not leveled as specified in the contract, it was due to the fact that the flooding of the land had caused it to settle in spots. The plaintiff declared that he could not go on with the work unless he was paid the progress payments as prescribed by the contract; that he was compelled to pay for labor and material and depended upon these payments for the purpose of enabling him to proceed with the work; that unless he paid the men who were employed to assist him in the execution of the contract, they would cease working for him. The defendant then proposed to advance the plaintiff as much money as the March statement called for provided the plaintiff would sign a statement acknowledging that the work done by him down to that time

was not completed in accordance with the requirements of the contract. This proposition the plaintiff refused to accede to. The controversy remained unsettled and the plaintiff, in the hope (so he testified) of reaching a satisfactory settlement with the defendant of the demand contained in the statement of March 1st, remained on the premises with his equipment until the latter part of April, 1920, when, concluding that no settlement would be effected, he began preparations for moving the equipment from the premises and abandoning the contract. About the same time he notified the defendant in writing that he rescinded and had abandoned the contract, and thereafter delivered to the defendant a statement showing the amount of work done during the month of April and demanding that the same, together with the money due for work done in the month of March, be paid. Either shortly before or after the notice of rescission was served by the plaintiff upon defendant, and while the plaintiff was in the act of moving his equipment from the premises, the defendant made an offer in writing to the plaintiff that the differences between them be submitted to arbitration, in accordance with the provision of the contract stipulating that any dispute arising between the parties from any matter involved in the contract should be submitted to a board of arbitration for determination.

The facts above set forth stand in the record uncontradicted. Evidence of other facts will later be referred to herein as we consider certain points, the solution of which will necessitate such consideration.

[1] The proposition which first will be considered involves a determination of the true meaning of the provision of the contract stipulating that payments shall be made to the plaintiff on the tenth day of each month for the work done during the preceding month.

The contract provides, as we have seen, that the monthly payments "shall be made not later than the tenth day of each month for the work *done* in the previous calendar month." Nowhere does the contract provide in so many words, or in express language, that, before the plaintiff shall be entitled to a monthly or progress payment so provided for, the work shall have been completed—that is, finished in accordance with the specifications and requirements of the contract. It is the position of the defendant, however, that,

notwithstanding the contract does not specifically stipulate that the work shall be done in full conformity with its requirements before the plaintiff shall be entitled to progress payments as specified therein, the agreement, nevertheless, clearly contemplates that before plaintiff shall be entitled to such payments the latter shall prepare and present to defendant a written statement, which shall be authenticated or checked and approved by the defendant, showing not only the amount of work done, but also that the work has been done in accordance with the specifications and requirements of the contract. In other words, the contention is that the plaintiff is not, within the plain contemplation and spirit, if not the letter, of the contract, entitled to be paid for any work done during any month unless it was made to appear that the work thus far done has been finished or completed in substantial compliance with the specifications of the contract. On the other hand, the plaintiff contends that the intention of the parties was that he should be paid for work done each calendar month whether the same did or did not involve a completion of such work within the requirements of the contract and that the contract so expressly provides.

We are inclined to accept the plaintiff's construction of the contract in the particular here considered. As above stated, the contract does not expressly provide that, as a condition precedent to the right of plaintiff to receive the progress or monthly payments, the work shall be done in accordance with the specifications and requirements of the contract. It is quite obvious that had such been the intention the parties would have taken the pains to have expressed it in the contract in language which would have afforded no ground for any possible misunderstanding as to such intention. It would have been a very easy matter thus to have phrased the contract if such had been the meaning which the parties intended to ascribe to it. Moreover, it can readily be understood how such a provision could work to the great disadvantage of the contractor, particularly where, as here, the undertaking involves a vast amount of work and labor and an extensive equipment for the proper performance of the terms of the contract. For illustration, the contractor might, during a month, bestow, in a proper way, a large amount of work upon the premises to be improved without completing such work as the contract required, and, unless

he was a man of ample ready means which he could use for that purpose (and the plaintiff in this case testified that he was not himself able to finance the enterprise or proceed with it without receiving installment payments), he could not go on with the work in the absence of the monthly payments prescribed by the contract to be used in defraying the necessary expense to which he was required to go in the employment of labor and material for the purposes of the undertaking. Or, let it be supposed that it required him a full month to lay the foundation for a levee in one of the checks. This would not be a completion of that particular work according to the requirements of the agreement. Would it be reasonable to hold in such case that the contractor would not be entitled to payment for the work thus done in such month under the provision of the contract stipulating that monthly or progress payments should be made for work done? If so, and he was himself without the financial means to meet the current expenses arising against him by reason of the work, he would be compelled to surrender or abandon the contract and be left without remuneration for services already rendered, assuming that in such case legally the owner of the premises were not required or obligated to reimburse him for the work so performed. But however this all may be, the practical construction placed upon the contract by the parties themselves accords with that given it by the plaintiff. While now claiming that the plaintiff did not do the work in the months of January and February in pursuance of the specifications of the contract, the defendant, nevertheless, paid him the installments shown by his statement to be due for said months after approval of the same by its engineer. It is to be assumed that the defendant, having through its engineer examined, checked and approved the statement presented to it by the plaintiff for work done in the months of January and February, was fully aware, before payment for such work was made, that the work had not been finished as the contract required, assuming, of course, that such was the fact. Thus, as stated, the defendant must be assumed to have understood the provision in question as bearing the meaning given to it by the plaintiff and that it would not have made the payment on the statement delivered to it by the plaintiff on the first of March if it had not been its understanding that the provision, at the time it was in-

serted in the contract, was intended to convey that meaning.
[2]  While a practical construction of a writing by the par-
ties thereto is not by any means conclusive as to the correct
construction of the instrument, such construction is entitled to
great, if not controlling, weight in determining its proper
interpretation, where the language requiring interpretation
may be characterized by more or less ambiguity or uncer-
tainty.  (See 13 C. J., sec. 517, p. 546, and California cases
named in the note.)    Of course, this view of the meaning of
the provision under present consideration is limited to the
matter of progress payments—that is, it refers to the condi-
tion upon which the plaintiff is entitled to such payments.
Obviously, he would be required to complete the entire con-
tract in substantial compliance with the specifications of the
instrument.

[3]  It is not disputed that the statements presented by
the plaintiff correctly show the amount and character of the
work done by him in the month of March and April.    There-
fore, assuming that certain other points made by the defendant
hereinafter to be considered are devoid of legal force, the
view that we take of the provision of the contract above con-
sidered is decisive of this appeal against the plaintiff, since
"the failure to make the monthly payments was a substan-
tial breach of the contract by defendant, and justified the
plaintiff in refusing to proceed further thereunder."  (*San
Francisco Bridge Co.* v. *Dumbarton Land & Imp. Co.,* 119
Cal. 272, 274 [51 Pac. 335, 336] ; *Cox* v. *McLaughlin,* 76 Cal.
60 [9 Am. St. Rep. 164, 18 Pac. 100] ; *Porter* v. *Arrowhead
Reservoir Co.,* 100 Cal. 500 [35 Pac. 146] ; 2 Williston on
Contracts, sec. 848.)    These cases further hold that where,
as here, there has been a breach of a substantial pro-
vision of the contract by the defendant, the plaintiff is au-
thorized to proceed against the former upon a *quantum
meruit* for the reasonable value of the labor or services per-
formed, and this brings to mind the distinction between the
case of *Cox* v. *McLaughlin,* as reported in 54 Cal. 605, and
the present case.    In the former case the plaintiff contended
that the failure of the defendant to make a progress payment
at the time prescribed by the contract amounted to an act on
the part of the defendant which prevented the plaintiff from
proceeding with the fulfillment of the terms of the contract.
The court held that a mere failure to pay the considera-

tion for the work as it progresses according to the terms of the agreement, had never been held such an act of omission on the part of the defendant as to prevent the other party from completing the contract. In the present case there is no claim, either by averment in the complaint or otherwise, that the failure of the defendant to pay the installment due for work done in the month of March constituted an act which prevented the defendant from proceeding with the completion of the contract. Indeed, that is not the theory of the present action. The action here, as stated, is plainly and clearly one upon a *quantum meruit*. In other words, it is not an action upon the contract to recover the profits the plaintiff would have made if the work had been completed thereunder. The nature of the action by plaintiff necessarily implies a repudiation of the contract.

[4] The action, being upon a *quantum meruit*, it was proper, of course, to allow evidence as to the reasonable value of the labor performed and it was competent to prove what was the reasonable value of such labor by the opinions of experts fully qualified to give such testimony. In support of the proposition last stated we refer to the following cases: *Cowdery* v. *McChesney*, 124 Cal. 363 [57 Pac. 221]; *Cruso* v. *Clark*, 127 Cal. 341 [59 Pac. 700]; *Mosher* v. *Lack*, 41 Cal. App. 23 [181 Pac. 813].

[5] As to the proposition that the plaintiff is not limited to the contract price as the measure of what he is entitled to recover, where he has rescinded and abandoned the contract because of the breach thereof by the defendant, the rule is as stated in 3 Williston on Contracts, section 1485, as follows: "Where the plaintiff's failure to fulfill completely his obligations under the contract is due to the defendant's default, there is no reason for imposing any limitation on the amount which he may recover on a *quantum meruit* or *quantum valebat* for what he has done, other than that set by the principles of fair value previously stated. Though the amount or rate of compensation stated in the contract is evidence of this, it does not set a conclusive limit on the plaintiff's right." Again, in section 1459, the same learned author declares: "More frequently, however, the plaintiff is allowed to recover the real value of the services, though in excess of the contract price. The later rule seems more in accordance with the theory on which the right of

action must be based—that the contract is treated as re-scinded," the plaintiff declaring upon a *quantum meruit* and not upon the contract.

In *Johnston* v. *Star Bucket Pump Co.*, 274 Mo. 414 [202 S. W. 1143], the court in treating a proposition similar to the one involved here said: "But in case where the owner violates or breaches the contract, we universally say the plaintiff can elect to sue in *quantum meruit* rather than for damages on the contract. If he does so sue, the special contract performs no function in that suit. The defendant cannot undertake to limit the recovery by the terms of the contract, because he has breached the contract. To permit him to use his breached contract to limit a recovery against him would be to pay him a premium for his own wrong. The law does not contemplate such." (See, also, *Philadelphia* v. *Tripple*, 230 Pa. 480 [79 Atl. 703] ; *Adams* v. *Burbank*, 103 Cal. 646 [37 Pac. 640] ; *Cox* v. *McLaughlin*, 76 Cal. 60, 67 [9 Am. St. Rep. 164, 18 Pac. 100].)

The foregoing views answer the contention of the defendant that the court erred in admitting evidence of the value of the services of the plaintiff in excess of that fixed by the contract and in instructing the jury that the contract prices did not constitute the criterion for determining what the plaintiff was entitled to recover.

There is, however, another answer to the proposition last above discussed in the fact that the amount awarded the plaintiff by the jury accords with the prices specified in the contract. We have carefully examined the testimony presented by the plaintiff as to the reasonable value of the services performed and, without entering into an analysis or an examination in detail herein of said testimony, we may say that it clearly appears therefrom that the amount allowed by the jury is far below what the plaintiff would be entitled to for the work shown to have been done in the months of March and April, even according to the prices specified in the contract. Thus it is clear that, if it were to be conceded that the evidence allowed by the court upon the theory of the reasonable value of the work performed tended to show or did show that such reasonable value was in excess of the contract prices and the admission of such evidence was erroneous, the defendant suffered no injury

from the rulings allowing such testimony. The same is true as to the instruction upon that proposition.

But it is contended by the defendant that the notice under date of May 5, 1920, served on it by the plaintiff, shows very clearly that the plaintiff proceeded upon the theory that the work for which he here seeks compensation was completed according to the specifications of the contract. It is to be admitted that said notice does so indicate; but we cannot perceive what difference it would make so far as the result to be arrived at in this case is concerned. Even if the work was completed as the contract specifies, the defendant having breached the contract, the plaintiff would be at liberty either to sue upon the contract and recover according to the contract prices or upon a *quantum meruit* for the reasonable value of the completed work, it being readily conceivable that a portion of the work finished as the contract specifies might be of greater value than where the contract was considered as a whole. And here we may as well observe that there is some testimony from which, in our opinion, the jury could well have inferred that the work shown by the statements to have been done was completed as the contract specifies. The plaintiff testified that he leveled and checked 400 acres in Tract Three. He in no way qualified this statement and from it it may reasonably be inferred that he leveled and checked the number of acres mentioned in accordance with the specifications of the contract. At any rate, it is quite certain, not only from his testimony but from that of the defendant, that there were out of the 400 acres referred to between forty and fifty acres which were, prior to the first day of April, 1920, plowed and sown to barley by the defendant and from this circumstance it is clear that the work on the acreage thus utilized by the defendant had been completed as the contract specifies. There is also the testimony of the witness Rue, a civil engineer, who surveyed the land just prior to the trial for the purpose of determining whether it had been checked and leveled according to the requirements of the contract and who also made such an examination of the work done on a reservoir which had been constructed and some of the levees, to the effect that he assumed a certain level and found, according to his survey, that the leveling and checking were substantially according to the specifications of

the contract. [6] The contract provides that "each check shall be graded to a smooth and uniform surface and all holes shall be filled to the level of the check and all knolls shall be cut down to the level of the check with a maximum deviation of two-tenths of one foot." The witness Rue stated that there were fifteen acres in the whole tract where the maximum deviation was considerably greater than two-tenths of one foot. He was also made to say, upon cross-examination, as to the 400 acres generally, that from the highest point in the land to the lowest there might have been approximately a deviation of four-tenths of a foot, but this measurement was made upon the basis of the distance of the highest point from the lowest, and is, obviously, not in accordance with the provision of the contract the language of which we have just quoted. That provision evidently means that in determining the maximum deviation such deviation should be ascertained with reference to a datum-line, that is, a common level, and not with regard to the distance from the highest to the lowest points in different parts of the land. In other words, the provision means that the deviation should be measured from the highest or the lowest point to the level or datum-line, and not from the highest point to the lowest point, which would make the four-tenths of a foot deviation mentioned by the witness on cross-examination. This was the construction put upon the provision by the witness, and, as stated, we think it is the correct view of the provision, and, according to his testimony, while there might in places have been a deviation a trifle above two-tenths of a foot, yet, taking the whole acreage together, with the exception of the fifteen acres mentioned, the deviation was substantially as the contract provides. In addition to the foregoing testimony, we may refer to the testimony of the president of the defendant, who was called by the plaintiff under section 2055 of the Code of Civil Procedure (Stats. 1917, p. 58). He testified that he had stated to certain people, prospective buyers of the land, that a considerable portion of the 400 acres referred to above had been leveled and checked. He qualified this, however, by saying that he would not say that it had been leveled and checked "within the purview of the contract within two-tenths of a foot." Other witnesses who testified that they were familiar with the character of work specified to

be done by the contract and who had examined the work done by the plaintiff, testified to the reasonable value of such work. It is unnecessary, however, to proceed further with the examination of the testimony tending to show that the work was completed. It is sufficient to repeat that there is some testimony from which the jury could reasonably conclude that the work, or at least the bulk of it, for which defendant here asks to be paid, was done in substantial compliance with the contract, and, of course, if there be any substantial evidence as to that matter, even though contradicted, the verdict, so far as that point is concerned, cannot be disturbed.

The complaint that the plaintiff refused to perform the contract as required by its provisions is without merit. He testified that he did cause the land to be releveled in a number of different places after the flood test, these particular places having been pointed out or indicated by the defendant's superintendent after the water test was made and the water had dried up.

[7] The contention that the statement of work done presented by the plaintiff was not in proper form is without substantial ground for its support. The statements for the March and April work were substantially the same as the one presented to and accepted by the defendant for the work done in January and February. These statements appear to be so clear as to the amount and the character of work done as to have enabled the defendant's engineer without difficulty to check them and so compute and determine whether they were correct. Besides, the contract does not prescribe any particular form or manner in which the statement of the work should be made. The case here is not exactly the same as that of *Sinnott* v. *Schumacher,* 45 Cal. App. 46 [187 Pac. 105], as to the character of statement which a contractor must make and present to the owner as a prerequisite to the making of a progress payment. In that case the contract provided that the contractor shall furnish the architect at each time when payments became due a written report setting forth the *exact percentage of the work installed.* Here the contract, as we understand it, merely provides that the amount of work done during any month was to be shown by a statement, more or less of a general character, presented by the contractor, and that

seems clear enough to have been what the contractor in this case did. Furthermore, the defendant in this case made no objection to the form or character of the statement itself and did not base its refusal to pay upon that ground. In this connection we may add to what has already been said that the defendant's president testified that the only reason he refused to pay for the work for March, when the statement of the work done for that month was presented, was because plaintiff had been overpaid by defendant for the January and February work.

[8]   The declaration of the defendant that it offered to pay the plaintiff for the work done in March and April, but that he refused to accept such payment, is not supported. The defendant did offer to advance to the plaintiff an amount of money equal to the total amount called for by his statements for March and April provided he (plaintiff) would sign a written acknowledgment that the work had not been completed in accordance with the specifications of the contract. This the plaintiff refused to do. But this offer, obviously, did not constitute an offer of payment, and the plaintiff had the right to refuse it, and his act in doing so did not, as counsel for the defendant contend, constitute a bar to his right to abandon the contract and sue upon a *quantum meruit* or upon the contract itself if he had so elected.

[9]   The offer by the defendant to the plaintiff to submit their controversy to arbitration, and the refusal of the plaintiff to accept the offer, in no way affected or impaired the right of the plaintiff to rescind and abandon the contract. The provision in the contract for the submission to arbitration of any controversies arising between the parties with respect to the contract does not either expressly or by necessary implication say that in such instances arbitration shall be a condition precedent to the right of plaintiff to demand and receive the progress payments provided for in said contract. "An arbitration clause of a contract will not be construed as ousting the courts of jurisdiction unless such construction is inevitable, so that, unless the clause is made a condition precedent by express words or necessary implication, it will be construed as merely collateral to the liability clause and is no bar to an action without an award." (2 R. C. L., p. 363; *Oakdale Irr. Dist.* v. *Beard,*

47 Cal. App. 66, 72 [190 Pac. 224]; *Hamilton* v. *Home Ins. Co.*, 137 U. S. 711 [34 L. Ed. 708, 11 Sup. Ct. Rep. 133, see, also, Rose's U. S. Notes].)

[10] The point that the court erred in allowing a certain declaration made by J. W. Goodwin, president of the defendant, involving what counsel for the plaintiff seem to believe was a declaration against interest or an admission tending to show that the 400 acres of land were leveled and checked in accordance with the specifications of the contract, even if well taken, is of little consequence in its bearing upon the decision of this appeal. The declaration referred to was made by said Goodwin to one Carroll, in the course of negotiations between the two for the leasing of a portion of the 400 acres by the defendant to said Carroll, and it was to the effect that the entire acreage had been leveled and checked. There is grave doubt as to the admissibility of testimony of the declaration referred to upon the theory that it was a declaration against interest. Indeed, in our present view of the matter, we should say it is not admissible for that purpose. But we think that, in view of the fact that Goodwin's general testimony tended to show that none of the work for which the plaintiff claimed the right to be paid was done, as the contract specifies, the declaration would be admissible for the purposes of impeachment— that is, for the purpose of impeaching the testimony of Goodwin tending to show that the work had not been done as required by the contract. Obviously, if the testimony was admissible upon any theory or for any purpose, it cannot be said that its admission was prejudicial merely because it was allowed upon an erroneous theory. The court also instructed the jury with regard to the testimony of the declaration in part as follows: "Evidence has been offered of certain admissions of J. W. Goodwin, President of San Joaquin Agricultural Corporation. Whatever a party voluntarily admits to be true, though the admission be contrary to his interest, may be reasonably taken for the truth." The court should not have given this instruction, for, as above pointed out, the theory upon which testimony of the declaration of Goodwin was admissible, if admissible at all, is that its tendency was to impeach other parts of his testimony. Indeed, such an instruction should not be given in any case. But, considering the entire record, including, of course, the

evidence, and particularly in view of the construction which we have been led to give to that provision of the contract stipulating for monthly payments for work done, the conclusion that no prejudice or miscarriage of justice resulted from the giving of said instruction is justified. (Const., art. VI, sec. 4½.)

There are no other points which we conceive it is necessary to be considered.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 22, 1923.

All the Justices concurred.