[Civ. No. 9320.   First Appellate District, Division Two.—May 6, 1935.]

GUNTHER R. LESSING, Respondent, v. MRS. CEDRIC GIBBONS, Appellant.

Walter E. Burke and Harold E. Thomas for Appellant.

Charles R. Nelson for Respondent.

SPENCE, J.—Plaintiff, an attorney at law, brought this action to recover the alleged balance due for legal services performed for defendant. Upon a trial by the court, sitting without a jury, plaintiff had judgment for the sum of $16,000, from which judgment defendant appeals.

The pleadings herein give no hint of the questions involved on this appeal. The first count alleged that plaintiff had performed legal services for defendant of the reasonable value of $35,000. The second count alleged that plaintiff

had performed legal services for defendant and that defendant had agreed to pay the sum of $35,000 therefor. Both counts alleged the payment of the sum of $4,000 to plaintiff on account of said services and judgment was prayed for the balance of $31,000. The answer admitted the performance of the legal services but denied that said services were reasonably worth any sum in excess of the amount paid, to wit, $4,000. It further denied that defendant agreed to pay plaintiff any sum in excess of $4,000 for said services. Full payment and satisfaction of plaintiff's claims was therefore affirmatively alleged. The trial court found against the existence of an express agreement to pay for said services as alleged in the complaint, but found that the services had been performed at the request of defendant and that said services were of the reasonable value of $20,000. No attack is made upon said findings on this appeal. The trial court made further findings in relation to the employment of plaintiff by defendant under a written agreement and the wrongful discharge of plaintiff from said employment. It is the existence of said written agreement and discharge of the plaintiff from his employment thereunder which gives rise to the questions presented here. It is therefore necessary to set forth certain facts as a basis for a discussion of these questions.

The defendant, who was originally sued herein as Dolores del Rio and who is still known by that name in her professional work, was a native of Mexico. She was possessed of dramatic talent and was induced to come to California to seek fame in the motion picture world by Mr. Edwin Carewe, a motion-picture director. She entered into a contract with Mr. Carewe in 1925 and shortly thereafter started her work in the production of photoplays. Her success was phenomenal. Shortly after defendant's arrival in California, plaintiff had become acquainted with defendant and thereafter performed various legal services for her.

On July 26, 1927, plaintiff and defendant entered into a written agreement whereby plaintiff was employed "to act as attorney for and to render all legal advice to said Dolores A. del Rio, and to represent her in all matters which may now or hereafter be pending in any of the Courts of the State of California brought by or against said Dolores A.

del Rio during the continuance and term of this Agreement; and to prepare all contracts and render, all and singular, such legal services for and in behalf of said Dolores A. del Rio'' as said Dolores del Rio might reasonably require. The agreement was to cover the period from March 30, 1927, to March 30, 1931.

As a "retainer fee" under said agreement, it was agreed that plaintiff should be paid as follows: "One Hundred Dollars ($100.00) per month, payable monthly, in advance, on the first day of each month during the term of this contract. In addition to said $100.00 monthly, the party of the second part is to receive and shall be paid by the parties of the first part, (meaning Dolores del Rio and her husband) at the end of each thirteen weeks or quarterly period during the life of this contract a sum of money equal to One Per Cent (1%) of the net amount received and/or collected by the said Dolores A. del Rio by virtue of her profession of actress during the said preceding thirteen weeks or quarterly period, whether the said moneys be received as salary, commission, percentage or royalty from moving pictures, . . . the monthly payments of $100.00 each theretofore paid during such quarterly period shall be deducted from and credited upon the percentage, if any, payable at the end of said thirteen weeks or quarterly period as aforesaid." Certain other provisions are found in said agreement providing for the calculation of plaintiff's compensation under certain contingencies. Among these provisions is found the following: "It is understood that the Party of the Second Part has already and now is rendering valuable services to the Parties of the First Part, and that part of the consideration for this contract is the deferring of the payment of reasonable fees and the spreading of payment of the same over a period of time; and it is agreed that the Party of the Second Part shall in no event be obligated to render extraordinary services requiring his leaving the City of Los Angeles on legal business for the Parties of the First Part without additional compensation, or which may require his remaining away from his office in any legal matter for more than two days during any one month."

Among other provisions of said agreement is found the following: "It is agreed and understood that the Party of

the Second Part in accepting this employment, agrees that he will not accept any employment or retainer from any individual, syndicate or corporation wherein the subject of such employment would adversely affect the interests of said Dolores A. del Rio.''

No question is raised concerning the validity of said agreement nor is any question raised concerning the performance of the services by plaintiff. In fact, it is conceded that plaintiff performed numerous and varied types of legal services for defendant under said agreement until September, 1929, and that all of said services were satisfactorily performed. Defendant's success continued and plaintiff, defendant and Mr. Carewe remained upon the friendliest terms for some time. Among the many services rendered under said agreement was the negotiation and preparation of an agreement in January, 1928, whereby Feature Productions, Inc., a subsidiary of United Artists, was to produce seven plays in which defendant was to star under the direction of Mr. Carewe and for which she was to receive compensation amounting to approximately $700,000. Shortly thereafter and in said month of January, 1928, plaintiff entered into a written agreement with Mr. Carewe for the performance of legal services for said Mr. Carewe. In said agreement the existence of plaintiff's agreement with defendant was set forth and it was agreed ''that the said Dolores del Rio shall have priority in the right of the services of Lessing, and the said Lessing shall be at liberty to accept any cause, give advice and render legal service for the said Dolores del Rio even though the same may contravene or be antagonistic to the rights or interests, or what may appear to be the rights or interests of Carewe . . . and in such event Lessing may advise Carewe either orally or in writing that he cannot represent him or render any services in any such question, case or cause which may arise because the same may be or may appear to be contrary to, or in contravention of the rights or interests of the said Dolores del Rio.''

While it does not appear that defendant knew the exact terms of said agreement, it does appear that defendant knew that plaintiff had represented and was representing Mr. Carewe in many matters and that defendant made no ob-

jection thereto. Furthermore, defendant admitted on the witness stand that plaintiff had told her on numerous occasions that he was obligated to represent her as against Mr. Carewe in any matter where their interests might conflict. The friendly and successful relationship of these parties continued until 1929, when certain differences arose between defendant and Mr. Carewe. Their differences did not involve legal questions but purely personal differences of opinion and antipathies. Defendant lost confidence in Mr. Carewe and felt that she could not achieve her highest ambitions under his direction. She was desirous of having her pictures titled, ''Joseph N. Schenck presents Dolores del Rio'', rather than having the title show that she was being presented by Mr. Carewe. She conferred with Mr. Schenck and Mr. Considine of United Artists in September, 1929. These gentlemen were agreeable to taking over defendant's existing contracts or making a new contract with her. Mr. Carewe was likewise agreeable to such an arrangement. Mr. Carewe had previously conferred with Mr. Schenck and agreed with him regarding the basis upon which Mr. Carewe would be compensated in the event this arrangement was carried out. Defendant was very happy over her conference with Mr. Schenck and Mr. Considine and promptly communicated the good news to plaintiff at his home where she dined with plaintiff and Mrs. Lessing.

At that time arrangements were made for plaintiff to proceed with the necessary negotiations with United Artists to work out defendant's plans. In their conversation, plaintiff advised defendant that Mr. Carewe had asked plaintiff to represent him also in this matter. He told her that he saw no conflict of interest, but if she so desired, he would not represent Mr. Carewe. Defendant stated that she had no objection; that all she wanted was to ''get rid of him'' (meaning Mr. Carewe) and to be presented by Mr. Schenck. It was then understood that plaintiff would proceed with the negotiations on the following morning. The foregoing conversation was not denied by defendant at the trial but she merely stated that she did not remember.

The following morning plaintiff talked with Mr. Carewe and thereafter telephoned defendant, told her of his conversation with Mr. Carewe and again asked her if she had

any objection to his representing both defendant and Mr. Carewe in dealing with United Artists. Defendant stated that she had no objection and plaintiff thereupon proceeded to confer with certain representatives of United Artists. Defendant in substance admits having the above-mentioned telephone conversation. She claimed upon the trial that she was "shocked" by the suggestion that plaintiff represent both herself and Mr. Carewe, but admits, "I just said 'That is all right.'" About half an hour thereafter she telephoned back to plaintiff and discharged him as her attorney. Plaintiff again told defendant that if she had any objection to his representing Mr. Carewe, he would not do so, but defendant said to plaintiff, "It is too late now. I want another attorney." By this telephone conversation, the admittedly friendly and wholly satisfactory professional relationship which had theretofore existed at all times between plaintiff and defendant was abruptly terminated by defendant.

Upon the foregoing evidence the trial court found "that in the month of September, 1929, without cause or justification, the defendant discharged the plaintiff as such attorney, and that plaintiff was thereafter by the act of said defendant prevented from fully performing his contract according to the terms and tenor thereof". The trial court therefore proceeded upon the theory that plaintiff was entitled to recover upon a *quantum meruit* for the services performed.

■ Appellant first contends that the evidence is insufficient to sustain the finding that respondent was discharged without cause or justification, but we find no merit in this contention. In support of the contention that respondent was rightfully discharged appellant cites and relies upon *Anderson* v. *Eaton,* 211 Cal. 113 [293 Pac. 788], but neither the holding in that case nor the language employed in the opinion is determinative of the question before us. It is· sufficient to point out with respect to the decision in that case that there was not only actual litigation pending before the Industrial Accident Commission but there was also contemplated litigation against a third party tort-feasor. Obviously the attorney for the employer's insurance carrier could not properly represent the conflicting interests of both

the insurance carrier and the mother of the deceased employee under the circumstances, and the contract of employment between the attorney and the mother of the deceased employee was declared void as against public policy. While there is strong language used in the opinion, we find nothing therein to indicate the view that the circumstances before us would justify the discharge of respondent. In the present case there was no litigation pending or contemplated. Appellant and Mr. Carewe were both seeking to terminate the relationship theretofore existing and to establish a new relationship with United Artists. Their general objective was the same. There is ample testimony to show that the terms upon which this general objective would be reached had been substantially agreed upon by each of said parties with the representatives of United Artists, and that the possibility of any conflict of interest arising between appellant and Mr. Carewe in accomplishing this objective was entirely remote. Under these circumstances, we see no reason why respondent might not represent both appellant and Mr. Carewe with the knowledge and consent of both in concluding the negotiations and drawing the necessary agreements.

We are fully aware of the delicacy of the questions which can arise in cases where an attorney attempts to represent two parties whose interests might develop a conflict. ■ But in the absence of litigation or contemplated litigation, the general rule prohibiting the representation of clients with conflicting interests by a single attorney has never been so broadly stated as to preclude an attorney from ever accepting employment from two different persons merely because of a possibility of a conflict of interests. The general question of "Representing Conflicting Interests" is dealt with at some length in Thornton on Attorneys at Law, sections 174 et seq., and the author states in section 176, page 314, "The question as to whether there is any inconsistency in representing particular interests must depend largely upon the facts presented by each case." Again, in section 175, at page 312, it is said: "The position of an attorney who acts for both parties to the knowledge of each, in the preparation of papers needed to effect their purpose, and gives to each the advice necessary for his protection, is recognized by the

law as a proper one." (See, also, 6 Cor. Jur., pp. 619 et seq., sec. 105; *Hobart* v. *Vail* (*Taylor* v. *Vail*), 80 Vt. 152 [66 Atl. 820]; *Lawall* v. *Groman,* 180 Pa. 532 [37 Atl. 98, 57 Am. St. Rep. 662]; *Deering* v. *Schreyer,* 27 Misc. 237 [58 N. Y. Supp. 485].) Were this not the rule, the common practice of attorneys in acting for both partners in drawing articles of copartnership or drawing agreements for the dissolution of copartnership, ·in acting for both the grantor and the grantee in the sale of real property, in acting for both the seller and purchaser in the sale of personal property, in acting for both the lessor and the lessee in the leasing of property, and in acting for both the lender and the borrower in handling a loan transaction would be prohibited even though done in the utmost good faith and with the full consent of all parties concerned. In each of these instances there is the possibility of conflict, if not an actual conflict, in the interests of the persons represented, but it cannot be said as a matter of law that an attorney is prohibited from acting for both parties in such cases with the knowledge and consent of both. In the present case, the evidence fails to disclose any such conflict of interest between appellant and Mr. Carewe as would prevent respondent from representing both of them with their consent in dealing with United Artists. Said parties may have felt that it was to the advantage of both to be represented by one attorney who was familiar with their affairs for the purpose of amicably consummating their plan. As there was ample evidence including the admission of appellant to show that appellant had given her consent to respondent's representation of Mr. Carewe as well as herself and that appellant had discharged respondent without giving him the opportunity of withdrawing as attorney for Mr. Carewe, there was ample evidence to sustain the finding that the discharge was without cause or justification.

Appellant makes two further contentions which may be discussed together. The first of these is that the trial court should have found that respondent's claim had been fully paid and satisfied because of the payment by appellant of the amounts specified in the contract up to time of the discharge and that the trial court's findings to the contrary are not sustained by the evidence. The second of these contentions is that the trial court should have limited re-

spondent's recovery "at all events, to the contract price". Under the facts before us, we find no merit in either of these contentions.

█ It is well settled that one who is wrongfully discharged and prevented from further performance of his contract may elect as a general rule to treat the contract as rescinded, may sue upon a *quantum meruit* as if the special contract of employment had never been made and may recover the reasonable value of the services performed even though such reasonable value exceeds the contract price. (*Brown* v. *Crown Gold Min. Co.*, 150 Cal. 376 [89 Pac. 86]; *Hart* v. *Buckley*, 164 Cal. 160 [128 Pac. 29]; *Welch* v. *Gunn*, 101 Cal. App. 359 [281 Pac. 704]; *Laiblin* v. *San Joaquin Agr. Corp.*, 60 Cal. App. 516 [213 Pac. 529]; *Davidson* v. *Laughlin*, 138 Cal. 320 [71 Pac. 345, 5 L. R. A. (N. S.) 579]; *Adams* v. *Burbank*, 103 Cal. 646 [37 Pac. 640]; *Tubbs* v. *Delillo*, 10 Cal. App. 612 [127 Pac. 514]; *Cox* v. *McLaughlin*, 76 Cal. 60 [18 Pac. 100, 9 Am. St. Rep. 164]; *Gray* v. *Bekins*, 186 Cal. 389 [199 Pac. 767]; Williston on Contracts, sec. 1459; Woodward on Quasi Contracts, sec. 269.)

█ Appellant, however, seems to take the position that the present case falls within an exception to the general rule and cites sections 266 and 351 of the Restatement of the Law of Contracts, the latter section being entitled "Part performance for which the Contract Provides a Definitely Apportioned Exchange". Appellant cites other authorities relating to so-called divisible or apportionable contracts and contends that the contract here was divisible or apportionable and as payments had been made for the portion of the services performed, no recovery could be had upon a *quantum meruit* for such services. Many of the authorities cited by appellant were also cited in the recent case of *Boomer* v. *Muir*, 74 Cal. App. Dec. 435 [24 Pac. (2d) 570]. While a hearing was granted in that case by the Supreme Court and the appeal was thereafter dismissed, we refer to the decision therein for a discussion of said authorities. See, also, authorities collected and discussed in an article found in volume XXIII, California Law Review, page 313.

But in the present case we are not called upon to determine the question of whether the claimed exception to,

the general rule is recognized in this state in cases of divisible or apportionable contracts as the contract here was clearly neither divisible nor apportionable. In other words, the contract did not provide for a "definitely apportioned exchange" of the services to be performed during any one period for the payments to be made during such period. Any possible doubt which might have otherwise arisen regarding this question is dispelled by the following recital found in the contract: "It is understood that the Party of the Second Part has already and is now rendering valuable services to the Parties of the First Part, and that part of the consideration for this contract is the deferring of the payment of reasonable fees and the spreading of payment of the same over a period of time." The contract was therefore entire rather than divisible or apportionable and, under the general rule above mentioned, respondent's recovery was not limited by the amount of the payments theretofore made under the contract nor by the contract price.

In connection with the claim that the recovery should have been limited in any event to the contract price, it may be further stated that there was no means of ascertaining the "contract price" in the present case. Respondent had agreed to perform all necessary legal services for appellant during the term of the contract. Even the amount of the total retainer fee to be paid was dependent upon several contingencies under the terms of the contract, but in addition thereto respondent was to receive additional compensation for any services which required him to leave the city of Los Angeles or which required him to remain away from his office for more than two days in any one month. As the "contract price", or in other words respondent's total compensation under the contract for the entire term thereof, could not therefore be determined in the present case, the *dictum* quoted by appellant from *Elconin* v. *Yalen*, 208 Cal. 546, at page 549 [282 Pac. 791], can have no application. Similarly in that case the "contract price" could not be determined from the contract of employment and the court there continued by stating, "Said contract, however, lacking any provision whatsoever by which to measure plaintiff's compensation, he was entitled to recover the reason-

able value of said services admittedly rendered by him, before his discharge by defendants.''

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.